L. MEISEL & CO. v. NATIONAL JEWELERS' BOARD OF TRADE.

(Supreme Court, Appellate Term, First Department.  April 28, 1915.)

1. CORPORATIONS ☞377½, New, vol. 21 Key-No. Series—POWERS—PRACTICE OF LAW.

> The practice of law by a corporation is malum in se, contrary to public policy, and malum prohibitum, under the express provisions of Penal Law (Consol. Laws, c. 40) § 280, which prohibits a corporation from practicing or appearing as an attorney in any court, from making it a business to practice as an attorney, from holding itself out as entitled to practice, from furnishing legal services or advice or supplying attorneys, from

---

rendering legal services of any kind in actions or proceedings, or from assuming in any manner to practice law or advertising as an attorney.

2. CORPORATIONS ⊕⊃377½, New, vol. 21 Key-No. Series—POWERS—"PRACTICE OF LAW"—BANKRUPTCY—ASSIGNMENT FOR CREDITORS.

The "practice of law," which is prohibited to a corporation, is not limited to the conduct of cases in courts, but embraces the preparation of pleadings and other legal papers and conveyances, and the giving of advice in matters connected with the law, and includes representing a creditor in bankruptcy proceedings, or in the collection of a claim against one who has made a general assignment for the benefit of creditors.

[For other definitions, see Words and Phrases, First and Second Series, Practice of Law.]

3. CORPORATIONS ⊕⊃377½, New, vol. 21 Key-No. Series—POWERS—PRACTICE OF LAW—BANKRUPTCY.

The fact that bankruptcy proceedings are in the federal court does not render Penal Law (Consol. Laws, c. 40) § 280, prohibiting corporations from practicing law, void in so far as it applies to such proceedings, since the state can prohibit its own creatures from doing acts contrary to public policy, and General Order in Bankruptcy No. 4 (89 Fed. iv, 32 C. C. A. viii) provides that proceedings in bankruptcy may be conducted by the bankrupt in person, or by any person, but a creditor can only represent his individual interest, and that every party may appear by attorney who shall be authorized to practice in the Circuit or District Courts, and rule 11 of the United States District Court for the Southern District of New York provides that admission to practice in that court may be granted to any member of the bar of the state in good standing and professional repute, and rule 111 provides that any member of the United States bar shall be dropped when he shall have been disbarred from the state bar.

Appeal from Municipal Court, Borough of Manhattan, First District.

Action by L. Meisel & Co. against the National Jewelers' Board of Trade. Judgment for the plaintiff, and defendant appeals. Affirmed.

Argued February term, 1915, before GUY, PENDLETON, and SHEARN, JJ.

Beekman, Menken & Griscom, of New York City (William C. Armstrong, of New York City, of counsel), for appellant.

Cass & Apfel, of New York City (Alvin C. Cass, of New York City, of counsel), for respondent.

SHEARN, J. This case presents for determination a question which has been very generally discussed during the past year, namely, what amounts to the practice of law on the part of a corporation. The respondent Meisel, doing business under the name of L. Meisel & Co., went to the office of the appellant, the National Jewelers' Board of Trade (a New York membership corporation), in 1913, and asked it to collect a claim which he had against one F. W. Wedgren, who was in bankruptcy. Respondent was informed that Wedgren, was in bankruptcy, and that it would be necessary for him to file a claim in bankruptcy with the appellant to enable it to collect the claim. Respondent was instructed to bring to the appellant the notes representing the claim, together with a statement of his claim, which he did. Then

the appellant gave Meisel certain papers to sign, which were prepared in its office. These papers were a proof of Meisel's claim in bankruptcy. Thereafter the appellant sent to Meisel a check for $6.76, which purported to be the amount collected on his claim, less $3 charged and retained by the Board of Trade for its services. Meisel did not cash the check, and offered to return it to the Board of Trade on the trial, which offer was refused.

Meisel also had a claim against a concern known as the Pacific Jewelry Company, and went to see the Board of Trade in regard thereto, and requested it to collect the claim. The representative of the Board of Trade asked Meisel to make him a statement of his claim, which he did. The claim was upon past-due promissory·notes, which Meisel brought to the Board of Trade and left with it. The Board of Trade informed Meisel that the Pacific Jewelry Company had made an assignment for the benefit of creditors. Meisel signed certain papers which the Board of Trade prepared for him, but could not recollect their nature or contents. Subsequently the Board of Trade sent its check to Meisel for $28.06, ·representing the amount collected by it from said bankrupt, less $3.20 fees. Plaintiff did not cash the check, but tendered it to the Board of Trade on the trial; the tender being refused. At the time of the transactions Meisel was not a member of the Board of Trade.

The Board of Trade's form of voucher, attached to the checks, is of interest. The following is the one used in the matter of the bankruptcy of Wedgren:

| | Claim against F. W. Wedgren | Claim No. B1700 |
|---|---|---|
| | ~~in full~~ | |
| | Amount collected 1st dividend 5%. ................................... | $9 76 |
| | ~~on a/c~~ | |
| | Interest ..................................................... | |
| | Costs ........................................................ | |
| Less: | Paid direct.................................................... | |
| | Previously remitted........................................... | |
| | Mdse. returned............................................... | |
| | Total ..................................................... | |
| Less: | Fees ......................................................... | |
| | Suit fee....................................................... | 3 |
| | Disbursements ............................................... | |
| | Exchange ................................................... | |
| | Amount of check............................................... | $6 76 |

The significance of the items·of "costs," "fees," and "suit fee" is obvious. Has the appellant, a membership corporation organized as a Board of Trade "for purposes other than pecuniary profit," the right to represent a creditor in a bankruptcy proceeding, or in proceedings on behalf of a creditor in the matter of the general assignment of a bankrupt for the benefit of creditors, to advise the creditor in such procedings, to undertake and do all the things appertaining to the prosecution of the creditor's claims in such proceedings, to take the steps necessary to protect the creditor's interests therein, and make a charge for such services? The· answer to the question depends upon

whether such services constitute legal services, for, if they do, the conduct of the Board of Trade is illegal; it being both malum in se and malum prohibitum for a corporation to practice law. It is unnecessary to consider whether the acts of the Board of Trade are ultra vires, first, because, the contracts have been performed; and, second, because, if the defendant's conduct is either malum in se or malum prohibitum, it is illegal.

[1] That the practice of law by a corporation is contrary to public policy and malum in se has been decided by the Court of Appeals. Matter of Co-operative Law Co., 198 N. Y. 479, 483, 484, 92 N. E. 15, 32 L. R. A. (N. S.) 55, 139 Am. St. Rep. 839, 19 Ann. Cas. 879. The sound reasons for so.holding were fully and convincingly stated therein by Judge Vann, and need not be repeated. That the practice of law by a corporation is malum prohibitum is obvious upon a mere reading of section 280 of the Penal Law. If section 280 is subdivided into its various parts, and the things prohibited are stated separately, it appears that under this section of the Penal Law it is unlawful for any corporation:

(1) To practice or appear as an attorney at law for any person other than itself in any court in this state, or before any judicial body.

(2) To make it a business to practice as an attorney at law for any person other than itself in any of said courts.

(3) To hold itself out to the public as being entitled to practice law.

(4) *To render or furnish legal service or advice.*

(5) *To furnish attorneys or counsel.*

(6) *To render legal services of any kind* in actions or proceedings ·of any nature or in any other way or manner.

(7) In any other manner to assume to be entitled to practice law.

(8) To assume, use, or advertise the title of lawyer or attorney at law, or equivalent terms, in such manner as to convey the impression that it is entitled to practice law, or to furnish legal advice, service, or counsel.

(9) To advertise that it has, owns, conducts, or maintains a law office, or an office for the practice of law, or for furnishing legal advice, services, or counsel.

(10) To solicit itself, or through its officers, agents, or employés, any claim or demand for the purpose of bringing an action thereon, or of representing as attorney at law, or for furnishing legal advice, services, or counsel to a person sued or about to be sued, or who may be affected by any action or proceeding which has been or may be instituted in any court or before any judicial body, or for the purpose of so representing any person in the pursuit of any civil remedy.

[2] In determining whether the transactions herein disclosed constituted the practice of law and the furnishing of legal services by the Board of Trade, a sensible and sufficient definition is found in Re Duncan (1909) 83 S. C. 186, 189, 65 S. E. 210, 211 (24 L. R. A. [N. S.] 750, 18 Ann. Cas. 657):

"It is too obvious for discussion that the practice of law is not limited to the conduct of cases in courts. According to the generally understood definition of the practice of law in this country, it embraces the preparation of

pleadings and other papers incident to actions and special proceedings
* * * on behalf of clients before judges and courts, and in addition con-
veyancing and preparation of legal instruments of all kinds, and, in gen-
eral, all advice to clients, and all action taken for them in matters connected
with the law. An attorney at law is one who engages in any of those branches
of the practice of law. The following is a concise definition given by the
Supreme Court of the United States: 'Persons acting professionally in legal
formalities, negotiations, or proceedings by the warrant or authority of their
clients may be regarded as attorneys at law within the meaning of that
designation, as employed in this country.' Savings Bank v. Ward, 100 U. S.
195 [25 L. Ed. 621]. Under these definitions there can be no doubt that Dun-
can engaged in the practice of law."

Thornton on Attorneys at Law, in section 69, defines the practice of
law in the same terms. In Eley v. Miller, 7 Ind. App. 529, 535, 34 N.
E. 836, 837, the court, while stating that, as generally understood, the
practice of law is the doing or performing of services in a court of
justice, in any matter depending therein, said:

"But in a larger sense it includes the legal advice and counsel, and the
preparation of legal instruments and contracts by which legal rights are se-
cured, although such matter may or may not be depending in a court."

That the definition of what constitutes the practice of law stated in
Re Duncan, supra, should and will be accepted and applied by the courts
in this state is clearly indicated by the cases of Matter of City of New
York, 144 App. Div. 107, 128 N. Y. Supp. 999, Matter of Bensel, 140
App. Div. 944, 126 N. Y. Supp. 1121, affirmed 201 N. Y. 531, 94 N. E.
1091, and Buxton v. Lietz, 136 N. Y. Supp. 829, and 139 N. Y.
Supp. 46.

Now, consider the services ordinarily incident to representing a
creditor and enforcing his claim in bankruptcy matters, such as the
Wedgren Case herein involved. The promissory notes required ex-
amination as to execution and the form of the signature; i. e., whether
the maker was liable in an individual or representative capacity, wheth-
er signed in a trade-name, as distinguished from an individual name, etc.
Inquiry was necessary concerning the inception and delivery of the
notes, whether for value or accommodation, and as to any possible
defenses or counterclaims. Acting on this information, the client
would be advised whether to proceed. The next step would be the
preparation of proof of claim. This is a legal instrument, and the mere
fact that it is on a printed form and might be filled out by a layman
does not change its character, any more than the fact that confessions
of judgment, bills of costs, affidavits of service, and many simple forms
of pleading on notes and for goods sold and delivered are frequently
printed changes their character. The subsequent steps that ordinarily
occur, such as joining with one or another group of creditors in the
selection of a trustee, expediting or opposing the disposition of the
assets of the bankrupt estate, the consideration of proposed compromis-
es, reorganizations, and substitution of securities for claims, the various
problems incidental to receivership, the form in which dividends are
received and receipted for, and innumerable other details intervening
between the filing of the petition in bankruptcy and a discharge, all
involve at one stage or another proceedings on behalf of the client
in courts, the preparation of legal instruments of various kinds, the

rendition of legal advice, and action taken for the clients in matters connected with the law.

These services require special knowledge, the fidelity of the relation between attorney and client, responsibility to the courts and, for success, experience in what is generally recognized as a special line of· legal work. Frequently the relation requires actual appearance in court and the conduct of litigation. That such proceedings are contemplated and provided for by this Board of Trade in its relations to its clients is shown by its printed form of voucher, containing provision for "costs," "suit fee," and "fees." That the services involved and contemplated by this Board of Trade in representing plaintiff in the bankruptcy of Wedgren and prosecuting his claim therein were legal services seems too plain to require further consideration. Similarly, in representing him and prosecuting his claim against the Pacific Jewelry Company, whose property was in the hands of a general assignee for the benefit of creditors, the services were legal services, and for the most part similar in kind to those already enumerated. Ordinarily, a proper representation of the creditor in such matters involves an examination of the assignment, consideration of its validity, the sufficiency and form of the assignee's bond, an examination of schedules, alertness against the allowance of improper claims, keeping track of suits brought by and against the assignee, the accounting, and a multitude of other important details that will at once occur to any practicing lawyer.

Appellant cites Matter of Associated Lawyers Co., 134 App. Div. 350, 119 N. Y. Supp. 77, as holding that a corporation can act as a collection agency. The court did not so hold. That was an application made under section 280 of the Penal Law for the approval by the court of the petitioner under the provision that the prohibitions of the section should not—

"apply to organizations organized for benevolent or charitable purposes, or for the purpose of assisting persons without means in the pursuit of any civil remedy, whose existence, organization or incorporation may be approved by the Appellate Division."

The court said:

"It seems to us quite evident that the only authority given to this court is to approve 'organizations organized for benevolent or charitable purposes, or for the purpose of assisting persons without means in the pursuit of any civil remedy.' While it has never been legal for a corporation to practice law, a system has grown up by which corporations undertake to procure attorneys for the transaction of the law business of its clients, and while the legality of such corporate action has been doubted, the impropriety of allowing corporations to enter into such business has been universally recognized and by this legislation it has been prohibited. * * * We think, therefore, that the granting of this application would be entirely ineffective to allow the petitioning corporation to disobey the provisions of this section, and that the court is given no authority to authorize it to continue to perform any act which this statute prohibits."

Accordingly the petition was denied. It is true that the court added at the end of the opinion the statement that:

"It is quite clear that, so far as the business of this corporation is confined to the collection of claims without legal proceedings, it is not affected by this statute."

This was obiter, and unnecessary to the decision. It is by virtue of this dictum that appellant claims that it has been held that a corporation can act as a collection agency. The foregoing statement of the case shows that it was not so held in that case. Even if it had been so held, it would not affect the decision here; for, as has been shown, the services rendered in representing creditors in bankruptcy proceedings and in matters of general assignments for the benefit of creditors are legal services rendered in connection with legal proceedings. All that can be claimed for the dictum is that the court intimated, by way of obiter, its opinion that the mere sending out of dunning letters by a corporation does not constitute a violation of section 280 of the Penal Law. Furthermore, it is to be doubted that the court would so decide if that question were squarely and properly presented. When it is considered that the corporation that undertakes the collection of claims without suit is generally intrusted with the evidences of debt, with transcripts from its client's private books, with access to its correspondence, and, further, that the statement of the case made by the client involves disclosures which are of a nature that ought to be privileged; when it is considered that the dunning letter is ordinary preliminary to a suit carried on by a disguised attorney acting as the employé of the corporation; and, finally, when it is realized that the moneys collected belong to the client and ought to be subject to court orders in summary proceedings, there is a good deal to be said in favor of holding that the operation of a collection agency, with or without legal proceedings, constitutes the practice of law. When that case arises, good and sufficient reasons for the courts so holding will be found in the address on the subject delivered by Mr. Charles A. Boston before a national association of lawyers in 1913 (see American Legal News, August, 1913, p. 15); the report of the Committee on Professional Ethics of the American Bar Association for 1914; the address by Hon. George W. Wickersham, made recently before the Bar Association of Chicago (see N. Y. Law Journal, November 25, 1914); the brief submitted by the Committee on Unlawful Practice of the Law, of the New York County Lawyers' Association, in the Matter of the Application of Charles L. Apfel v. National Jewelers' Board of Trade, before the Attorney General; and the report of the Attorney General in the Matter of Charles L. Apfel for the institution of an action to vacate the charter and annul the corporate existence of the National Jewelers' Board of Trade, reported in the New York Law Journal, September 14, 1914. It suffices to say here, however, that we are not dealing with a mere matter of sending out dunning letters, and that the Matter of Associated Lawyers Co., supra, has no application.

[3] Finally, it is asserted that section 280 of the Penal Law is void, in so far as it seeks to prevent a corporation from practicing law in the courts of the United States and that, as the Wedgren claim was collected through the bankruptcy court, it was not a thing prohibited by the Penal Law. The statute not only prohibits a corporation from appearing as attorney in any court in this state, or before any judicial body, but prohibits it from rendering or furnishing legal service of any kind in actions or proceedings of any nature, and from in any other

manner assuming to be entitled to practice law. To hold that this constitutes an abridgment of privileges or immunities of citizens of the United States, or that it deprives persons of property without due process of law, would seem to be absurd. There is no federal statute permitting corporations to practice law in the federal courts, and none is likely to be passed in the face of the numerous decisions of the courts holding that for a corporation to engage in the practice of law is malum in se and contrary to public policy.

It might as well be contended that, if there were no federal statutes punishing perjury committed in the federal courts, the perjury law of the state would be void in so far as it applied to perjury committed before a referee in bankruptcy sitting outside a federal building, but within the state. When the time comes, and Congress or the judicial power of the United States authorizes corporations to practice law in the federal courts, it will be time enough to consider this grave constitutional question. In the meantime, it will be assumed that the Legislature of the state, which creates corporations, has retained the power to prohibit its own creatures from doing acts that are deemed by the Legislature to be inimical to the public interest, contrary to public policy, and that statutes to this end will be enforced by the courts of this state. Furthermore, and decisive of the point as to who may practice in the bankruptcy courts, the General Orders in Bankruptcy provide (No. 4 [89 Fed. iv, 32 C. C. A. viii]):

"Proceedings in bankruptcy may be conducted by the bankrupt in person in his own behalf, or by a petitioning or opposing creditor; but a *creditor* will *only* be allowed to manage before the court his individual interest. Every party may appear and conduct the proceedings by attorney, who shall be an attorney or counselor authorized to practice in the Circuit or District Court. The name of the attorney or counselor, with his place of business, shall be entered upon the docket, with the date of the entry. All papers or proceedings offered by an attorney to be filed shall be endorsed as above required, and orders granted on motion shall contain the name of the party or attorney making the motion. Notices and orders which are not, by the act or by these general orders, required to be served on the party personally may be served upon his attorney."

Rule 11 of the District Court of the United States for the Southern District of New York provides as follows:

"Admission to practice in this court may be granted, on motion of an attorney of this court, to any member of the bar of the state of New York, being of good character and professional repute."

Rule 111 provides that any member of the United States bar shall be dropped from the bar of that court when he shall have been disbarred from the bar of the state of New York. The plaintiff in this case is a "creditor," not a "bankrupt," and even if the defendant were a "petitioning or opposing creditor" and could under the above rule represent a "bankrupt," it could not represent a "creditor."

Judgment affirmed, with costs. All concur.