**In re Gordon MORGAN, Debtor.**

**In re Alcibiades NUNEZ and Irma Nunez, Debtor.**

**Bankruptcy Nos. 197–12429–352, 195–17996–352.**

United States Bankruptcy Court, E.D. New York.

Sept. 30, 1998.

"Firm A" for Litton Loan Servicing, Inc., State Street Bank & Trust Company.

"Firm B" for Great Financial as servicing agent for Federal Home Loan Mortgage Corporation.

## MEMORANDUM DECISION

MARVIN A. HOLLAND, Bankruptcy Judge.

The following version of the Court's September 30, 1997 decision has been redacted solely for the purposes of publication. As this decision concludes with referrals to the Second Department's Grievance Committee, the names of the law firms and the attorneys involved

herein have been removed in an effort to maintain the confidentiality provided by New York State Law for matters relating to the conduct or discipline of an attorney. (N.Y.Jud.Law § 90(10) (McKinney 1998); N.Y.Comp.Codes R. & Regs. tit. 22, § 691.4(j) (1998))

This decision questions and addresses the propriety of proceedings commenced by mortgage servicing agents that have no pecuniary interest in either the outcome of the proceeding or in the underlying mortgage. In each of these two separate and unrelated cases a servicing agent for a mortgagee, identified as such in the moving papers and represented by its own counsel, purported to act on behalf of its principal pursuant to either a power of attorney or other contract. Neither servicing agent possesses any beneficial interest in the subject mortgage. This court, sua sponte, raised the issue of whether such conduct constituted the unauthorized practice of law.[1] Several adjournments were provided in each case to allow counsel to address this issue.

We now conclude not only that a servicing agent has no standing to represent the interests of a secured creditor in a legal proceeding but also that motions made by servicing agents on behalf of and for the sole benefit of the mortgagee necessitates the exercise of legal judgment in a manner proscribed by the laws of the State of New York, the state in which the services were rendered.

## BACKGROUND

In the Morgan case, a notice of appearance was filed by the law offices of "Firm A" as attorneys for Litton Loan Servicing, Inc. ("Litton") on May 27, 1997. This was followed, on July 28, 1997, by their filing an objection to confirmation of plan on behalf of Litton Loan Servicing, Inc.—a document which was signed by "Attorney A" on behalf

---

1. Since the issues herein were raised sua sponte and both of the underlying bankruptcies have been resolved, it is appropriate to establish this court's jurisdiction. Pursuant to 11 U.S.C. § 105(a) bankruptcy courts possess inherent power to *inter alia* prevent an abuse of process. ("The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C.

§ 105(a).) *See e.g. Peugeot v. U.S. Trustee (In re Crayton )*, 192 B.R. 970, 976 (9th Cir. BAP 1996) (citing cases) (bankruptcy court has inherent power to suspend or disbar attorneys); *In re Robinson*, 198 B.R. 1017, 1025 (Bankr.N.D.Ga. 1996) ("bankruptcy courts possess inherent powers of a federal court to regulate its docket to ensure that its process is not being abused").

of Firm A as "Attorneys for secured creditor Litton Loan Servicing, Inc." On August 18, 1997 a motion seeking to preclude revesting of title to the debtor's residence, dismissal of the case, and for relief from the automatic stay was filed by Firm A for "Green Point Savings Bank its successors and/or assigns" ("Green Point").

After this court raised the unauthorized practice of law issue, Firm A submitted affidavits asserting for the first time that the Firm A had not been retained by either Litton or Green Point, but rather a third entity: State Street Bank & Trust Company ("State Street"). Firm A asserted that the debtor's mortgage had been assigned by Green Point to State Street prior to the filing of the bankruptcy petition, (11/21/97 Affidavit of Paul T. Bavis, an officer of State Street Bank & Trust Company, (the "Bavis Aff.") at ¶¶ 1–3), and that Litton functioned as a servicing agent for State Street pursuant to a "Limited Power of Attorney." (11/22/97 Affirmation of Attorney A (the "Attorney A Affirm.") at ¶ 1; Bavis Aff. at ¶¶ 2, 5.) This undated document provides for Litton to discharge the following "obligations":

> 6. Appearing, litigating and compromising any matter in any court either as plaintiff or defendant: *provided, however,* Servicer shall not be authorized to commence any proceedings (other than foreclosure, sequestration, replevin, bankruptcy and eviction or to recover payments due under any agreement) without the written consent of Principle (Ex. A to Firm A's Mem. of Law dated 9/15/97) (emphasis in the original).

While State Street asserts that it retained Firm A, (Bavis Aff. at ¶ 4), this clearly contradicts numerous unexplained representations made by Firm A in the above men-

tioned documents and during the course of these proceedings by members of Firm A.[2]

In the Nunez case, a motion was filed on May 5, 1997, for relief from the automatic stay by "Great Financial Mortgage as servicing agent for Federal Home Loan Mortgage Corporation." Great Financial was represented by the law firm of "Firm B." Counsel admits to being retained by Great Financial. (10/28/97 Affirmation of Attorney B (the "Attorney B Affirm.") at ¶ 4.) Great Financial Mortgage is a servicing agent for Federal Home Loan Mortgage Corporation ("Freddie Mac"). Freddie Mac, as a part of what it terms its 'Designated Counsel/Trustee Program,' gives its servicing agents a choice of three law firms—"designated counsel"—for retention in area bankruptcy proceedings. (Ex. A, 8/21/97 Affirmation of Attorney B2). Firm B is one of these firms. Freddie Mac and its designated attorneys agree on the attorneys fees to be charged for each matter. Great Financial pays the attorney fees, but it is reimbursed by Freddie Mac. Great Financial is not paid for referring matters to designated counsel, and Freddie Mac retains the ability to make settlement decisions. (¶ 7 Attorney B Affirm.)

## DISCUSSION

■ At issue in these cases are the objections to confirmation of a Chapter 13 plan filed in the Morgan case and a motion to modify the automatic stay filed in the Nunez case, both of which are required by the Bankruptcy Code to be made by "a party in interest." 11 U.S.C. §§ 362(d) & 1324. Federal Rule of Civil Procedure 17(a) provides that every action shall be prosecuted in the name of the real party in interest. While the Federal Rules are not by themselves applicable in bankruptcy[3] except as they may otherwise may be made so,[4] Fed.R.Civ.P. 17(a) is

---

**2.** When asked who was Firm A's client, Firm A gave different answers on different occasions. At an October, 1998 hearing, an associate of Firm A responded: "[o]ur client is Litton Loan Servicing, but I believe it may be also [sic] State Street Bank and Trust. *We get directions from Litton* who also gets their direction from State Street." (10/8/97 Tr. at 4) (emphasis supplied), after having earlier represented that "[o]ur client is Litton Loan Servicing, they are the servicing agent, [sic] of State Street Bank and Trust as assignee of the

mortgage from Greenpoint Savings Bank." (8/19/97 Tr. at 4.) Further, a Memorandum of Law filed by Firm A on November 3, 1997 states on page four: "[t]hat Litton retained an attorney...."

**3.** Fed.R.Civ.P. 81

**4.** i.e. Fed.R.Bankr.P. 7017.

merely a restatement of both the common law and of basic federal constitutional jurisdiction. *See* U.S. Const. art. III, § 2.[5] Federal judicial jurisdiction is predicated on a case or controversy, *see e.g. Flast v. Cohen,* 392 U.S. 83, 101, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947 (1968), but in these cases the servicing agents who have no controversy with the mortgagor came into court with their own counsel and sought legal relief on behalf of their principal, the mortgagee. To the extent that a justiciable controversy exists with either of these debtors, it exists solely with the holders of the mortgages, and not the servicing agents, because it is only the holders of the mortgages and the mortgagors in these cases who have a 'personal stake in the outcome' of the proceeding. *See Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

■ Where a servicing agent has no controversy with the mortgagor and goes into court with its own counsel to seek legal relief on behalf of its principal, that servicing agent procures legal services for the benefit of the principal mortgagee. It is this "brokering" of legal services by the servicing agent that constitutes the improper behavior addressed herein. In asserting and enforcing in their own name legal rights which do not belong to them they act as middlemen. While it may be proper in the marketplace for a merchant to purchase goods or services for the sole and express purpose of supplying them to another for a fee or other profit, when the subject of such a transaction is legal services, the transaction is prohibited because it constitutes the providing of legal services by one not properly licensed to practice law. When the prohibited aspect of the transaction is knowingly misrepresented to a court, such conduct can only be described as being so sloppy as to border on contempt.

■ It is axiomatic that the duty that arises out of an attorney-client relationship is one owed only to the client and to the court. Any attorney, not having been retained by the real party in interest, owes no duty of allegiance to that entity and has no authority to act for that entity. *See e.g. Estate of Ginor v. Landsberg,* 960 F.Supp. 661, 667 (S.D.N.Y.1996) ("It is well-settled that an attorney owes no fiduciary duty to a third party with whom the attorney is not in privity.") An attorney representing a mortgage servicing agent is in the anomalous position of owing a professional obligation only to an entity that is not the real party in interest while having no such obligation to the only entity that does have such an interest. In such a situation, the holder of the mortgage does not even enjoy the benefits of the attorney-client privilege. *See Tisby v. Buffalo Gen. Hosp.,* 157 F.R.D. 157, 164 (W.D.N.Y. 1994) ("The duty under DR–4–101(B) to preserve client confidences and secrets generally attaches only when an attorney-client relationship exists") (citation omitted); *Walsh v. Northrop Grumman Corp.,* 165 F.R.D. 16, 19 (E.D.N.Y.1996). Here, the package of services provided to the principal mortgagees by the servicing agents (which, at the very least included supervising counsel and, at most, the actual services provided by the agent's attorney) compromised the attorney/client relationship between counsel and the real party in interest.[6]

■ Litton relies on a power of attorney (and Great Financial looks to its Designated Counsel Program) for authority to represent the principal, but "[a] person authorized to bring suit solely on the basis of a power of attorney is not a real party in interest; courts have uniformly denied such a party the right to sue in its own name."[7] *Air-*

---

5. Article III states that "[t]he judicial Power shall extend to all Cases ... [and] Controversies...."

6. In this analysis, it is important to keep in mind that neither of these attorneys claim to have been selected by the servicing agent to solely represent the principal (the propriety of which hypothetical conduct we need not now address). Each acknowledges its representation of the agent; neither claims to represent only the principal mortgagee.

7. Firm A relies on General Obligations Law § 5–1502–H for the proposition that a power of attorney confers general authority for it to appear and litigate on behalf of State Street. (Attorney A Affirm. at ¶ 7.) While this section grants an agent broad authority to litigate a dispute, § 5–1502–H's grant of authority is specifically extended to statutory short form powers of attorney which are defined by General Obligations Law § 5–1501. Firm A's "Limited Power of Attorney" is an undated document between Texas (Litton)

lines *Reporting Corp. v. S and N Travel, Inc.*, 857 F.Supp. 1043, 1046 (E.D.N.Y.1994) (effect of assignment of claims on diversity jurisdiction). We take judicial notice that servicing agents do not perform their function gratuitously. Regardless of how the attorney/servicing agent/mortgagee relationship is structured in these cases, the servicing agent provided what amounts to legal services to its principal for a fee, although with counsel's participation.

"Servicing agent" does not seem to be a defined term in New York law.[8] Presumably both servicing agents are either New York corporations or qualified to do business in New York. The prohibition against corporations engaging in the practice of law in New York is found in § 495(1) of New York's Judiciary Law, which provides in relevant part that "[n]o corporation or voluntary association shall . . . (d) furnish attorneys or counsel, nor (e) render legal services of any kind in actions or proceedings of any nature or in any other way or manner."

Case law prior to the enactment of § 495(*l*) of New York's Judiciary Law had found conduct similar to the servicing agents' to constitute the unauthorized practice of law. *See United States Title Guaranty Co. v. Brown*, 86 Misc. 287, 149 N.Y.S. 186 (N.Y. Supreme Ct.1914) (Court finding agreement unlawful under § 280 of the Penal Law where attorney contracted with corporation to provide legal services benefitting the corporation's clients who had contracted with corporation to receive such benefit); *Meisel & Co. v. National Jewelers' Board of Trade*, 90 Misc. 19, 152 N.Y.S. 913 (1st Dept.1915)

(Practice of law, including the collection of a claim in bankruptcy, by a corporation is prohibited under then existing Penal Law § 280).

The servicing agent's self-defined role in these cases is clearly administrative or clerical in nature.[9] Yet, for whatever reason, the servicing agents have either initiated or participated in proceedings before this court either independently or "on behalf" of a secured creditor. Such conduct is analogous to a patent preparation corporation retaining an attorney to prepare a patent application on behalf of a customer of the corporation. *Lefkowitz v. Napatco, Inc.*, 51 N.Y.2d 434, 434 N.Y.S.2d 925, 415 N.E.2d 916 (1980) ("A corporation which at the behest of a general practice attorney and for a fee causes a patent application to be prepared by a patent attorney or agent registered with the United States Patent Office renders legal rather than clerical services within the meaning of subdivisions 1 and 5 of section 495 of the Judiciary Law.").

Neither servicing agent has adequately accounted for what appears to be an exercise of legal judgment on their part in the making of the initial determination that it was necessary to seek relief in this court. Nor did either of the servicing agents provide this court with any New York law which authorizes an attorney representing the servicing agents to commence litigation on behalf of a secured creditor, or an explanation as to why the attorney was retained to represent the servicing agent rather than the real party in interest—the principal.[10] We could speculate

---

and Massachusetts (State Street) corporations which on its face does not comply with § 5–1501.

8. Mortgagees' agents are referenced but not defined in sections of New York law. *See e.g.* N.Y. Real Property Law § 254–d (McKinney 1991); N.Y. Real Property Actions and Proceedings Law § 1971 (McKinney 1979).

9. Great Financial describes its responsibilities to the secured lender as primarily "collecting monthly payments from the debtors and other mortgagors." (Attorney B Affirm. at ¶ 3.) "Litton acts as [the secured lender's] loan manager, directing business decisions and other matters relevant thereto" pursuant to authority allegedly conferred by a "Limited Power of Attorney." (Attorney A Affirm. at ¶ 5.)

10. Firm B states that Great Financial "is acting as the mortgage servicer which business it has the right to conduct pursuant to Section 96–a of the New York Banking Law." (10/28/97 Mem. of Law at p. 4.) Section 96–a provides in relevant part that "1. Every bank shall, subject to the restrictions and limitations contained in this article, have the power to service mortgages, and the superintendent shall have the power to prescribe, by specific or general regulation, the extent to which, and the conditions upon which, mortgages may be serviced." NY Banking Law § 96–a (McKinney 1998). However, no showing has been made either that Great Financial is a bank within the meaning of the N.Y. Banking Law § 2 or how "the power to service mortgages" grants Great Financial authority to seek relief in the bankruptcy court on behalf of the mortgagee.

as to whether absence of a more thoughtful analysis (or worse) is the cause, but we choose not to. Whatever the reason, the underlying behavior is proscribed!

Although we have been speaking of the behavior of the servicing agents, it is obvious that they would not have been able to pass legal services on to their principals had they not been acting in concert with the attorneys whose services constituted the gravamina of the offensive conduct. Indeed it is those legal professionals who by virtue of their presumed greater legal knowledge should have advised their clients, the agents, against engaging in such prohibited conduct. While ignorance of the law, although never exculpatory, may sometimes be urged on behalf of laypersons in mitigation, t would be disingenuous to so argue on behalf of anyone holding him/herself out as a legal professional.

Accordingly, we conclude that a servicing agent has no standing to represent the interests of a secured creditor in a legal proceeding, and that the above described behavior is statutorily proscribed. Therefore, the issues raised herein will be referred to the following authorities for appropriate action: as to the servicing agents, this matter is referred to the New York State Attorney General, and as to the law firms retained by the servicing agents, this matter is referred to Second Department's Grievance Committee. *See People v. Romero,* 91 N.Y.2d 750, 675 N.Y.S.2d 588, 698 N.E.2d 424 (1998); *Lawrence v. Houston,* 172 A.D.2d 923, 567 N.Y.S.2d 962, 964 (3d Dept.1991) (New York State Attorney–General or state bar association authorized to enforce unauthorized practice of law statute, Judiciary Law § 476–a).