**In re Mark F. VIENCEK, Debtor.**

**No. 99–64711.**

United States Bankruptcy Court,
N.D. New York.

Feb. 15, 2002.

James F. Selbach, Esq., Syracuse, NY, for Debtor.

Phillips, Lytle, Hitchcock, Blaine & Huber, LLP, for Aurora Loan Services, Inc., Buffalo, NY, William J. Brown, Of Counsel.

Lynn Harper Wilson, Esq., Syracuse, NY, for Chapter 13 Trustee.

## MEMORANDUM–DECISION, FINDINGS OF FACT CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

Presently under consideration by the Court are two motions filed by Mark F. Viencek ("Debtor"). The first motion was filed on January 4, 2001, asking the Court to expunge the claim of Aurora Loan Services, Inc. ("Aurora") because "[t]here is simply no debt between this debtor and Aurora." On March 15, 2001, Aurora filed a response, asserting that it had authority to file and defend the proof of claim it filed on October 25, 1999, and amended November 4, 1999.

On May 2, 2001, the Debtor filed a motion asking that the Court strike Aurora's response, alleging that Aurora, by arguing the position of the owner of the mortgage on the Debtor's residence, is engaging in the unauthorized practice of law. It is the Debtor's position that Aurora is a servicing agent and has no interest in the mortgage.

Both motions were heard on May 15, 2001, at the Court's regular motion term in Syracuse, New York. The Court adjourned the motions to June 26, 2001, to consider the arguments. The motions were consensually adjourned until July 24, 2001, at which time the Court granted the parties an opportunity to file additional memoranda of law. The motions were submitted for decision on August 7, 2001.[1]

## JURISDICTIONAL STATEMENT

The Court has jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1) and (b)(2)(A) and (B).

## FACTS

The Debtor filed a voluntary petition pursuant to chapter 13 of the Bankruptcy Code, 11 U.S.C. §§ 101–1330 ("Code") on August 26, 1999. On December 21, 1999, the Debtor filed his schedules and Statement of Financial Affairs, as well as his chapter 13 plan ("Plan"). Debtor lists Aurora as holding a claim in the amount of $92,276.56, secured by a mortgage on the Debtor's residence, valued by the Debtor at $80,000. The claim is not identified as being contingent, unliquidated or disputed. *See* Schedule D.

Aurora filed a proof of claim on October 29, 1999, in which it asserted a secured claim of $92,084.16, and $15,988.85 in arrears. Aurora is identified on the proof of claim as "Creditor" or "the person or entity to whom the Debtor owes money or property." Attached to the proof of claim is a copy of a note and mortgage, dated May 21, 1997, naming Commonfund Mort-

---

1. On November 15, 2001, the Court apprized the parties that it was prepared to render a decision. In light of the parties' advice that a possible settlement was being negotiated, the Court indicated it would give the parties until January 22, 2002, to file a motion and be heard on any settlement. This deadline was extended 30 days at the request of the parties in a letter dated January 16, 2002. However, on February 5, 2002, Debtor's counsel requested that the Court issue its decision.

gage Corporation ("Commonfund") as the "Lender." Also attached is a document, dated May 21, 1997, assigning Commonfund's interest in the mortgage to Source One Mortgage Services Corp. ("Source One"). According to another document attached to the proof of claim, on May 28, 1997, the same mortgage appears to have been assigned to Government National Mortgage Association ("GNMA") by Source One. Aurora indicates that Lehman Capital, a Division of Lehman Brothers Holding, Inc. ("Lehman") [2], acquired the loan from Source One pursuant to a Mortgage Servicing Purchase and Sale Agreement dated August 31, 1998, "as a group of approximately $1.65 billion of GNMA Mortgage Servicing Rights." *See* Exhibit B attached to Aurora's Response to Debtor's Request for Production of Documents and Things, filed August 7, 2001.[3]

On November 9, 1999, Aurora filed an amended proof of claim listing a secured claim of $92,276.56 and arrears totaling $16,181.25. According to the terms of the Plan, the amount of arrears owing to Aurora, based on its proof of claim, totaled $17,306.92, and was to be paid through the Plan.

### ARGUMENTS

The Debtor contends that the proof of claim filed by Aurora should be expunged because Aurora does not own the mortgage on the Debtor's residence and is not a creditor. The Debtor does not dispute Aurora's right, as a servicing agent, to file a proof of claim on behalf of the mortgagee, but contends that the proof of claim is not valid because it fails to identify the actual owner of the claim. At the hearing on May 15, 2001, Debtor's counsel acknowledged that there is a mortgage lien on the Debtor's residence and someone has a claim but that entity is not Aurora.

According to a letter addressed to Aurora and dated March 14, 2001, Lehman is the owner of the mortgage debt. *See* Exhibit F of Aurora's Response, filed March 15, 2001; *see* Declaration of Krista Gingrich, Vice President of Aurora, filed August 7, 2001. The letter states that pursuant to a Flow Servicing Agreement between Lehman and Aurora, dated February 15, 2000, Aurora was authorized to file the proof of claim. It appears that Aurora was also given authority to pursue the debt identified in the proof of claim. *See* Exhibits A, B and C attached to Aurora's Response, filed March 15, 2001.

It is Aurora's position that it was not necessary that Aurora own the mortgage in order for it to file the proof of claim and to defend it. Aurora argues that it just needs to have a tangible interest, which it does by virtue of its servicing activities for which it receives compensation. Aurora also contends that it can file a proof of claim which does not identify the actual creditor. Aurora points out that the "Official Forms" are prescribed by the Judicial Conference of the United States. Aurora takes the position that the current official form used in filing proofs of claim, "Form 10", was revised to delete the prior requirement for disclosure of agency.

In response, Debtor's counsel has submitted to the Court a copy of a letter,

---

**2.** According to a declaration of Scott Drosdick, Vice President and Associate Counsel of Aurora, Lehman Brothers Holding, Inc. owns 78% of Aurora's stock. *See* Exhibit C attached to Aurora's Response, filed May 16, 2001.

**3.** Aurora contends that on or about October 1, 1998, the Debtor received notification from Source One that "the servicing of our mortgage loan has been transferred to" Aurora and that all payments were to be remitted to Aurora. *See* Aurora's Supplemental Exhibit, filed July 23, 2001.

dated August 3, 2001, from Patricia S. Ketchum, Senior Attorney, Bankruptcy Judges Division of the Administrative Office of the U.S. Courts, who also served as staff counsel to the Advisory Committee on Bankruptcy Rules.[4] *See* Exhibit F, attached to Debtor's Attorney's Affirmation, filed August 7, 2001. In the letter, Ms. Ketchum suggests that the Advisory Committee, in discussing proposed amendments to the official forms, "intended to maintain the long-standing requirement that any agent disclose that capacity when filing a claim." *See id.*

Aurora asserts that if the Court were to determine that the proof of claim must disclose the agency relationship and the identity of the actual creditor, then it should be permitted to amend the proof of claim, which has provided the Debtor with notice of the existence, nature and amount of the claim.

With respect to the Debtor's second motion seeking to have Aurora's response in defense of the proof of claim stricken, the Debtor argues that Aurora is advancing arguments that are not its to make. It is the Debtor's position that the mere fact that Aurora has a contract to service the Debtor's mortgage does not authorize it to practice law and represent the interest and position of the actual party-in-interest. The Debtor asserts that Aurora's counsel is advancing arguments on behalf of an entity that is not the true party-in-interest.

In response, Aurora's counsel contends that it does not constitute the practice of law for Aurora to respond to a motion regarding its activities. Aurora argues that the proof of claim was filed by it as a duly authorized agent. Aurora points out that the Debtor is not objecting to the validity or amount of the claim; its only objection is based on the fact that Aurora filed the proof of claim.

## DISCUSSION

Debtor relies on two decisions in support of his motions. *See In re Morgan,* 225 B.R. 290 (Bankr.E.D.N.Y.1998) and *In re O'Dell,* 251 B.R. 602 (Bankr.N.D.Ala. 2000). Unfortunately for the Debtor, neither case is good law. The *Morgan* decision was vacated by the U.S. District Court of the Eastern District of New York, which found that the bankruptcy court's decision was an improper advisory opinion because, *inter alia,* the controversies at issue had been rendered moot, divesting the bankruptcy court of any authority to issue a decision. *See In re Nunez,* 2000 WL 655983 (E.D.N.Y. March 17, 2000). More recently, the *O'Dell* decision was reversed by the U.S. District Court of the Northern District of Alabama. *See In re O'Dell,* 268 B.R. 607 (N.D.Ala. 2001).

In *O'Dell,* the Debtors listed Max Flow Corporation as an unsecured non-priority creditor with a claim for unpaid prepetition charges on a credit card account. Max Flow filed a proof of claim "On Behalf of MBNA America Bank, N.A. and Its Assigns." The debtors filed an objection to the claim, asserting that Max Flow was not a party in interest. The debtors also filed a motion to strike Max Flow's reply. Both motions were granted by the bankruptcy court.

With respect to the debtors' argument that Max Flow had engaged in the unauthorized practice of law, the District Court in *O'Dell,* citing to *Wadsworth v. Yancey Bros. Co.,* 423 So.2d 1343 (Ala.1982), noted

> that it is possible for more than one party to be a real party in interest as to

---

**4.** It is the Advisory Committee that drafts the amendments to the rules which are ultimately submitted to the Judicial Conference for approval.

the creditor claim, illustrates an understanding of modern day financing by which creditors frequently carve up the bundle of rights associated with the claim. The court [in *Wadsworth*] correctly held that a debtor has no standing to challenge which entity appears in court to enforce a claim that the debtor owes (citations omitted).

*O'Dell* at 617. While the District Court in *O'Dell* ultimately concluded that Max Flow was the actual creditor and owned the claim, it made it clear that even if Max Flow had only been an authorized agent, it still was entitled to conduct the legal affairs of its principal. *See id.* at 613–614 (citations omitted).

■ In the present case, Aurora is a party in interest because of its pecuniary interest in the mortgages it services, including that on the Debtor's residence. As such it had standing to object to the Debtor's motion to expunge the claim. Accordingly, the Court will deny the Debtor's motion to strike Aurora's response to the Debtor's motion seeking expungement of the claim it filed.

■ As to the Debtor's motion seeking to expunge the claim filed by Aurora, the Court concludes that Aurora was authorized to file the proof of claim as the agent of either the owner or the mortgagee.[5] It is evident from the fact that the Debtor listed Aurora as a secured creditor in his schedules that he knew of the debt. Indeed, there is no argument by the Debtor that the amount listed on the proof of claim is in any way incorrect. The proof of claim was timely filed and, as noted by the District Court in *O'Dell*,

"debtors are supposed to pay their debts." *Id.* at 615. To allow the Debtor to expunge the claim based on Aurora's failure to disclose its principal would be to elevate form over substance. *See Pepper v. Litton*, 308 U.S. 295, 305, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939) (indicating that bankruptcy courts have the power to insure that "substance will not give way to form" and that "technical considerations will not prevent substantial justice from being done" with respect to the allowance of claims). As Aurora has correctly pointed out, amendments to a proof of claim are to be freely allowed as long as the original proof of claim provided notice of the existence, nature and amount of the claim, as well as the intent to hold the estate liable. *See McLean Industries, Inc.*, 121 B.R. 704, 708 (Bankr.S.D.N.Y. 1990); *In re Unioil, Inc.*, 962 F.2d 988, 992–993 (10th Cir.1992) (allowing the amendment of the original proof of claim to identify the proper claimant in the situation where the original proof of claim had been filed by the trustee without identifying the trust as his principal). Therefore, the Court will allow Aurora fifteen (15) days from the date of this Order to amend the proof of claim to identify the actual creditor, which it acknowledges it is not.

Based on the foregoing, it is hereby

ORDERED that the Debtor's motion seeking to strike Aurora's response is denied; it is further

ORDERED that Debtor's motion seeking expungement of the claim filed by Aurora is denied; and it is finally

---

**5.** In the context of these motions, it is unnecessary for the Court to make a determination of just who the actual creditor is. From the arguments made on behalf of Aurora and the documents presented for the Court's review, there is reason to believe that Mortgage Electronic Registration Systems, Inc. may be the mortgagee and Lehman may, at least at the time of the two hearings, have been the beneficial owner of the mortgage on the Debtor's residence.

ORDERED that Aurora be granted fifteen (15) days from the date of this Order to file an amended proof of claim identifying the actual creditor on whose behalf it was filed.