**In re Michael J. O'DELL, and Linda A. O'Dell, Debtors.**

No. 99–43337–JSS–13.

United States Bankruptcy Court, N.D. Alabama, Eastern Division.

Aug. 2, 2000.

---

Earl P. Underwood, Jr., Rice, Adams, Underwood & Associates, Anniston, Alabama, for debtor.

James H. Greer, Pelham, Alabama, D. Alexander Barnes, Alane A. Beckett, Beckett & Lee, LLP, Melvern, Pennsylvania, for Max Flow Corporation.

Mavis Willingham, Anniston, Alabama, for Chapter 13 Standing Trustee.

## MEMORANDUM OPINION

JAMES S. SLEDGE, Bankruptcy Judge.

The above captioned Chapter 13 case under title 11 of the United States Code comes before this Court on the Debtors objection to claim, a response filed thereto, and the Debtors motion to strike that response. As the initial Hearing set on the Debtors' objection was held one day subsequent to the Debtors' motion to strike the response, this Court continued the hearing to afford the parties adequate time and further requested the parties to submit briefs upon the issues presented by the Debtors' objection, motion to strike, and the response. The issues presented on briefs were whether the respondent is a

party in interest and has standing to defend an objection to claim, and whether the proof of claim identifies the actual creditor or is filed in the name of the respondent.

Upon the parties' submission of briefs, this Court held a final hearing on these matters. Present at that hearing on June 13, 2000 was Earl P. Underwood, Jr., the Debtors' attorney, James H. Greer, the attorney for Max Flow Corporation, the respondent, and Mavis Willingham, the Chapter 13 Standing Trustee.[1] Upon conclusion of the hearing, based upon the pleadings, briefs, and presentation of evidence and arguments at the hearing, this Court took these matters under advisement. After a review of the docket, evidence, arguments, statutory, and case law this Court holds that an authorized agent may file a proof of claim for a creditor when the creditor is clearly identified, but an agent may not address the merits of the claim or the rights of the creditor and renders this memorandum opinion and a separate rulings on the matters.

## JURISDICTION

Pursuant to the General Order of Reference, July 16, 1984, entered by the United States District Court for the Northern District of Alabama and 28 U.S.C. § 157(a), this Court possesses original and exclusive jurisdiction over this objection to claim pursuant to 28 U.S.C. §§ 1334(a), 1334(e), and 157(b)(1). In accordance with 28 U.S.C. §§ 157(b)(2)(A), and 157(b)(2)(B), these matters constitute a core proceeding. Venue in these matters is governed by 28 U.S.C. § 1048(1). Neither personal jurisdiction nor venue have been contested in this title 11 case or these specific matters. Therefore, this Court concludes that subject matter, in personam, and in rem jurisdiction exists and venue is proper.

Further, the Debtors seek an order striking the pleading of Max Flow Corporation responding to their objection to the claim filed by Max Flow Corporation on behalf of MBNA America Bank, N.A. on the ground that Max Flow Corporation is not a proper party in interest. Such motion invokes this Court's inherent power to enforce federal rules and procedures, the court's own rules, orders or procedures and to impose appropriate sanctions upon the failure to comply. *Link v. Wabash R. Co.*, 370 U.S. 626, 630 n. 1, 82 S.Ct. 1386, 1389 n. 1, 8 L.Ed.2d 734 (1962). That inherent power possessed by the Court is wielded to protect the orderly administration of justice and to preserve the dignity of the tribunal. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764–64, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980). Upon such precedence, this Court concludes it possesses inherent original and exclusive jurisdiction over this matter and can enter appropriate orders, rulings, and judgments pursuant to 11 U.S.C. § 105; Fed. R.Bankr.P. 9011, 9020; Fed.R.Civ.P. 11; and Bankr.L.R.2090–2, 2091–1.

## FACTS AND HISTORY

The Debtors filed a Chapter 13 petition on November 12, 1999. The Debtors scheduled an unsecured claim of MBNA America ("MBNA" or "Creditor"). On February 22, 2000, the alleged creditor, Max Flow Corporation, filed a proof of claim for $4,489.15. That proof of claim lists "Max Flow Corp. on Behalf of MBNA America Bank, N.A. and Its Assigns" as the designated creditor. The Debtors filed an Objection to Claim on the ground that Max Flow is not a party in interest. Max Flow Corporation, ("Max Flow" or "Claimant"), filed a Response asserting that it is the agent of MBNA and that the claim it filed was filed for MBNA America Bank, a proper party in interest. The Debtors

---

1. Although also appearing was Robert D. Carlee, attorney for Fort McClellan Credit Union, he appeared for purposes of his client's objection to confirmation, as confirmation was heard contemporaneous with this instant objection to claim. He was not present on this claim objection.

subsequently filed a motion to strike the response alleging that Max Flow is not a party in interest and citing as authority, *In re Morgan*, 225 B.R. 290 (Bankr.E.D.N.Y. 1998).

## DISCUSSION

There are several contentious issues in this case. The prime issue presented is what authority Max Flow possesses. Upon that determination, if Max Flow is an agent or servicing agent for the creditor, MBNA, the next issue is whether a servicing agent has authority to file a proof of claim on behalf of the principal creditor. Then, if a servicing agent has the authority to file a proof of claim, in whose name is such proof of claim to be filed. Next, this Court will determine whether the servicing agent has the legal authority to file a response to the Debtors' Objection to Claim. Finally, the Court will discuss any sanctionable actions and activities.

### A. Agent Authority and Status

This Court finds that the status of MBNA, as a general unsecured creditor of the Debtors and the Debtors' estate, is uncontested by the parties. *See,* Sched. F, Doc. No. 1; Am. Sched. F, Doc. No. 33; Resp't Resp., para. 5, Doc. No. 22; Dbtr. Br., pg. 3, Doc. No. 36; and Resp't Br., pp. 2–3, Doc. No. 34. The status of MBNA however is not the basis of the issues before this Court. The status at issue is that of Max Flow. It is on that status that this Court also finds the matter uncontested. The parties concede the fact that Max Flow is an agent or servicing agent for the creditor, MBNA.[2] *See,* Sched. F; Am. Sched. F; Resp't Resp., para. 7; Dbtr. Br., pg. 3; and Resp't Br., pp. 3–5.

 The Debtors' objection to claim and Max Flow's response thereto raise the issue of the authority of Max Flow as an agent of the creditor, MBNA. To determine the authority Max Flow possesses as an agent, this Court must look to state and common law principles of business organizations, contracts, and agency principal relationships.

Max Flow admits and concedes to being an agent of MBNA for the purpose of filing a proof of claim as agent of MBNA. *See,* Resp't. Resp. para. 7. In Court, Max Flow was pressed to disclose its full authority as an agent of MBNA. Max Flow rested its position only on authority to file claims for its principal, MBNA America. Although the attorney present for Max Flow raised the contention that Max Flow would have the authority to represent MBNA in an objection to the claim; Max Flow did not present any contract, power of attorney, or other document tending to show that it held the authority to act beyond filing a claim. Max Flow did attach to its response to the Debtors' objection to claim an affidavit made by a Mr. Kevin Matyniak, an employee of the creditor, MBNA America, and employed as a "Manager of the Bankruptcy Department." *See,* Resp't Resp.; Ex. A, Doc. No. 22. That affidavit stated the extent of Max Flow's authority as follows:

3. MBNA America Bank has authorized Max Flow Corp. to file a claim on its behalf in, *inter alia,* the Debtors' bankruptcy.

*See id.*

The affidavit is silent as to any other authority authorized by MBNA America Bank. Without evidentiary support for any other or additional authority, this Court finds that Max Flow, as agent or servicing agent of MBNA America, possesses the authority only to file claims as agent for its principal and the Creditor, MBNA America. Max Flow does not possess the authority to act in any other capacity, undertake any other actions, reduce any claim unto settlement, compromise a claim, claim

---

**2.** Although semantically dissimilar, as there is no statutory or common law definition for a 'servicing agent,' and thereby this Court must apply basic principles of contract, business, and principal and agency law to the actions of Max Flow in these proceedings at hand.

any right to collect, represent its principal in any manner, or otherwise act either on behalf of or as agent for MBNA America save for the filing of a claim.

An additional finding of fact is that the local attorney present for Max Flow, as well as the law firm of Beckett & Lee, L.L.P., which appears to be national counsel for Max Flow, have submitted all pleadings, briefs, responses, and even the proof of claim for and on behalf of Max Flow Corporation. *See*, POC # 15, Resp't Resp., Resp't Br. This Court finds that it is Max Flow that has entered into and holds an attorney-client relationship with both local and national counsel. Although the documents are all submitted unto the Court by "counsel for Max Flow Corp., on behalf of MBNA America Bank," *see*, Resp't Resp., Resp't Br., such language does not indicate, and this Court refuses to draw an unsubstantiated inference that MBNA possesses an attorney-client relationship regarding these matters with the two attorney-at-law, legal firms submitting these pleadings. Consequently, only Max Flow is being represented in these judicial proceedings. MBNA America Bank is not represented by its agent or servicing agent, Max Flow.[3]

### 1. Servicing Agent's Authority to Execute a Proof of Claim

 The authority to execute a proof of claim is governed by Fed.R.Bankr.P. 3001(b), which states that "[a] proof of claim shall be executed by the creditor or the creditor's authorized agent." Max Flow contends that because it is an agent of MBNA, it can therefore file a proof of claim under Bankruptcy Rule 3001(b). The Debtors contend that filing a proof of claim constitutes the unauthorized practice of law because the claim is not owned by

Max Flow and it has no genuine interest in the bankruptcy case. Moreover, the Debtors challenge Max Flow's interpretation of Rule 3001(b).

According to the Debtors, the use of the term "agent" in Rule 3001(b) refers to the person who physically executes the proof of claim. The Debtors present a compelling scenario to support their contention. Partnerships, corporations, and other fictitious legal entities must rely on a real person to physically execute a proof of claim. That real person would necessarily be an agent as anticipated by the Rule. For instance, an attorney for a corporation files a proof of claim as an agent for the corporation but not as the corporation itself. Consequently, the Debtors reason, a servicing agent is simply not an agent of the creditor for the purposes of Rule 3001(b). They argue that a servicing agent creates a "double agency" relationship because the servicing agent must also use a real person to physically execute the proof of claim. The Debtors argue the real person who executes the claim for the servicing agent is the agent of the servicing agent, not the creditor.

There is little caselaw on this issue. The Debtors' contention that the practice of law is involved in the filing of a proof of claim is supported not only by Alabama statute but also by bankruptcy case law. The Alabama statute defining the practice of law provides the following:

" . . . Whoever,

(1) In a representative capacity appears as an advocate or draws papers, pleadings or documents, or performs any act in connection with proceedings pending or prospective before a court or a body, board, committee, commission or officer constituted by law or having authority to

---

3. This Court notes that MBNA America Bank, N.A. is a corporate entity. Under well settled federal and state law, a fictitious legal entity must be represented by counsel. *See, Turner v. American Bar Assn.*, 407 F.Supp. 451, 476 (N.D.Tex.1975) (citing a 'long line of cases' requiring corporations to be represented in court by licensed counsel). Max Flow is not a legal firm whose members are licensed attorneys-at-law. Therefore, MBNA is not represented by licensed counsel and thereby cannot be seen as being present or in appearance for these proceedings.

take evidence in or settle or determine controversies in the exercise of the judicial power of the state or any subdivision thereof . . . is practicing law."

Ala.Code § 34–3–6(b)(1).

Under this definition, the practice of law, as enacted by the State Legislature of the State of Alabama, would encompass the acts of drafting, preparing, and the filing of a proof of claim. A proof of claim is a paper or document, the filing of such with the Clerk of the Bankruptcy Court is an act performed in connection with a pending title 11 proceeding and before a court constituted by law to take evidence and determine controversies in the exercise of judicial power. As additional support for this contention, the Chair of the 1986 Advisory Committee on Bankruptcy Rules, which oversaw the inclusion of Rule 9010 in its present amended status, admits that "the Rule is certainly not a model of clarity." *See, Wilson v. Valley Electric Membership Corp.*, 141 B.R. 309, 312 (E.D.La. 1992) (Sear, J., now C.J.). Judge Sear wrote that "preparing a proof of claim and presenting it to the court to have it allowed constitutes the practice of law." *Id.*, at 313.

However, in contrast to the above analysis, in *State Unauthorized Practice of Law Committee v. Paul Mason & Assocs., Inc.*, 46 F.3d 469, 472 (5th Cir.1995), the 5th Circuit rejected the Committee's complaints that a servicing agent's actions constituted the unauthorized practice of law. The court concluded the servicing agent merely performed administrative functions that could be performed by authorized non-lawyer agents without violating the Bankruptcy Rule against the unauthorized practice of law. *See id.* The Court explained the servicing agent typically "files a proof of claim in the bankruptcy proceeding, monitors the status of the case, and, where appropriate, contacts the debtor's counsel to determine whether a reaffirmation of debt is possible in lieu of relinquishing collateral." *Id.* at 470.

The servicing agent "handles no disputed claims and prohibits its employees from providing any legal advice to its clients." *Id.* The court stated "[t]he challenged activities of CBS have long been recognized by the bankruptcy courts as administrative functions that can be performed by authorized nonlawyer agents without offending rule 9010(a)'s prohibition against the unauthorized practice of law." *Id.* The court noted the Committee was not challenging the servicing agent's authority to execute a proof of claim. *See id.* at 471. However, the court remarked that "[t]he specific authority for an agent's execution of a proof of claim . . . is contained in Bankruptcy Rule 3001(b)." *Id.*

The Fifth Circuit's holding in *Paul Mason* is supported by the claims allowance process. Under the present bankruptcy system, the filing of a proof of claim is an administrative function that does not involve or invoke judicial considerations. A proof of claim, although 'filed with the Clerk of the Bankruptcy Court,' is not a judicially filed document. A proof of claim is not docketed in the case file, but is only annotated upon a 'Claims Register,' which is required to be maintained by the Clerk of the Bankruptcy Court only in cases "when it appears that there will be a distribution to unsecured creditors." Fed. R.Bankr.P. 5003(b). Under 11 U.S.C. § 502(a), unless and until an objection to the claim is filed, any proof of claim filed "is deemed allowed."

Additionally, the ability of an authorized agent to file a proof of claim for the creditor is Congressionally enacted. Rules 3001(b) 9010(a), and 9010(c), specifically enable an authorized agent to file a proof of claim for the creditor. What constitutes the practice of law is an enactment of the State Legislature. In applying Ala.Code § 34–3–6 to certain actions in a bankruptcy proceeding, the state law conflicts with a valid promulgation of federal law. When the federal law conflicts with state law, the threshold consideration necessary by the court is whether the matter in conflict is

within the exclusive domain of federal legislation. Here, the power of Congress to establish uniform laws on the subject of bankruptcies throughout the United States is unrestricted and paramount. *See,* U.S. Const. art. I, § 8, cl. 4; *International Shoe Co. v. Pinkus,* 278 U.S. 261, 265, 49 S.Ct. 108, 110, 73 L.Ed. 318 (1929). Congress exercised this power by enacting national, uniform bankruptcy laws, the most recent of which is the Bankruptcy Code, that necessarily exclude or displace any conflicting state regulation. *See,* International Shoe, 278 U.S. at 265, 49 S.Ct. 108.

■ The definition of the practice of law is the law of the State, and "though enacted in the exercise of powers not controverted, [it] must yield when incompatible with federal legislation." *See, Sperry v. Florida,* 373 U.S. 379, 384, 83 S.Ct. 1322, 1325, 10 L.Ed.2d 428 (1963). This is so due to application of the Supremacy Clause of the United States Constitution, which provides that:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding. U.S. Const. art. VI, § 2.

Although promulgation of bankruptcy law is within the exclusive domain of federal legislation, the practice of law is not preempted by any federal law. Here Congress regulated in an area of law historically preserved unto the states. With that, this Court must start with the assumption that the historic powers of the States in regulating the practice of law "were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress" *See, Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947).

> Such a purpose may be evidenced in several ways. The scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.... Or the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.... Likewise, the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose.... Or the state policy may produce a result inconsistent with the objective of the federal statute. *City of Burbank v. Lockheed Air Terminal Inc.,* 411 U.S. 624, 633, 93 S.Ct. 1854, 1859–60, 36 L.Ed.2d 547 (1973).

It is the final manner of evidencing the clear and manifest purpose of Congress that this Court finds applicable. Congress specifically formulated federal law that would result in an inconsistency with most applicable State laws governing the practice of law. The objective behind the federal statutes governing the filing of claims is to streamline the administrative functioning of the bankruptcy system and to permit creditors of the bankruptcy estate to participate in any distributions. It is upon such objective that an agent's filing of a proof of claim for a creditor, although constituting the practice of law, necessarily must be preempted by the construction and application of federal bankruptcy law. Upon the foregoing, this Court determines that the acts of executing and filing a proof of claim are administrative in function that, pursuant to 11 U.S.C. § 501; Fed. R.Bankr.P. 3001(b), 9010(a), and 9010(c), can be performed by either a creditor, or its authorized agent.

**2. Identification of Creditor and Agent on Proof of Claim**

■ Finding that a servicing agent is authorized under the Bankruptcy Rules to file a proof of claim for its principal, this Court is faced with the second issue, in whose name is a proof of claim to be executed. For this determination, the Court is faced with an analysis of what

constitutes a claim, a creditor, and the claims allowance process. The Bankruptcy Code statutorily defines a "claim" as meaning the:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5), Definitions.

This Court must also make a determination of whether statutorily Max Flow can be a creditor of these Debtors. The Bankruptcy Code, as enacted by Congress, statutorily defines a creditor:

(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;

(B) entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) of this title; or

(C) entity that has a community claim.

11 U.S.C. § 101(10), Definitions.

This Court has previously found uncontested that MBNA is a general unsecured creditor, and the Max Flow is the agent for MBNA for filing claims. This Court finds that Max Flow admits it does not own the claim at issue against the Debtors. *See also,* Resp't Resp. paras. 7–9, Resp't Br., pp. 2–5. Further, Max Flow does not contend or assert that it possesses any claim against these Debtors except for the claim at issue and only in an agency status.

In addition to those findings, there is no contractual right between Max Flow and these Debtors creating a right to payment.[4] There is also no contractual right between MBNA and Max Flow for it to receive payments on account of MBNA or creating a right to payment from the Debtors.[5] *See,* Resp't Resp., Ex. A, Doc. No. 22 (Max Flow's authority extends only to the filing of a claim). Also, as there is no contract between Max Flow and these Debtors, there necessarily cannot be an equitable remedy for any breach of performance arising between Max Flow and the Debtors.[6] Therefore, this Court finds and concludes that Max Flow does not possess a claim against the estate and thereby cannot be a creditor of these Debtors. Upon the determination that Max Flow cannot be a creditor, this Court must delve into the claims allowance process to determine who is the holder of the claim at issue.

The claims allowance process is central to the orderly administration of a bankruptcy estate's reorganization, as is found

---

4. Although Max Flow did receive rights and became a creditor in the Debtors' prior Chapter 13 case under title 11, by being a party participant and recipient to distributions under the order confirming the Debtors' plan of reorganization, those rights and status as creditor were extinguished upon the dismissal of that prior case. *See generally,* 11 U.S.C. § 349.

5. This Court does not find or conclude, nor should the inference be made or drawn that a contractual right, between a principal and its agent, for the agent to receive payments on a debt, for and on account of its principal, creates a claim whereby the agent becomes a creditor of a debtor. The right to receive payments for another is distinguishable, distinct, separate, and different from the right to payment, which is the required right in order to possess a claim and thereby rise to the status of a creditor. Even had Max Flow possessed the authority and right to receive payments for MBNA, such would not create in Max Flow the status of creditor.

6. Even if there were a breach of performance between the either the Debtors and MBNA or MBNA and Max Flow, such would not create an equitable remedy flowing unto Max Flow. Max Flow's only authority and thereby its only contractual interest with either party is with MBNA for the purpose of filing claims as agent for MBNA.

in a Chapter 13 case. In accordance with 11 U.S.C. § 502(a), a proof of claim is deemed allowed unless and until an objection is filed against that claim. This renders the claims allowance process merely an administrative function of the Clerk of the Bankruptcy Court, until an objection to a proof of claim is filed. Being that the initial claims allowance process is an administrative one, it places a proof of claim upon a heightened evidentiary plane than other papers filed in a title 11 case. A proof of claim is prima facie evidence of the amount and validity of the claim stated. *See*, Fed.R.Bankr.P. 3001(f). This grant of evidentiary stature is not freely given, as it comes with heightened responsibilities and associated costs.[7] To maintain an orderly administrative process, there must be adherence to the requirements of that process. The first step an alleged creditor must complete is to file a proof of claim.[8]

Beginning with the required content, "[a] proof of claim is a written statement setting forth a creditor's claim." *See*, Fed.R.Bankr.P. 3001(a). "A proof of claim is akin to a demand in a complaint for a money judgment in that each [creditor] seeks to collect money allegedly owed by the named person or entity [the debtor]." *See*, *Wilson v. Valley Electric*, 141 B.R. at 312–13. Indeed, in application of the broad language of what constitutes a claim in a bankruptcy case, this Court adopts the comparison that Judge Sear made between a proof of claim and a complaint for a money judgment. As in a complaint for money judgment, a proof of claim requires that the creditor's claim be set forth in writing. That requirement necessarily means that the proof of claim

provide the name of the holder of the claim (the 'plaintiff'),[9] the name of the debtor (the 'defendant'), the date of and basis for the claim (the factual allegations of a cause of action), and the amount of the claim (prayer for money damages). The comparison of a proof of claim to a complaint will be further discussed, but this Court needs to address the required provisions of a proof of claim first.

As required by procedural law enacted by Congress, "[a] proof of claim shall conform substantially to the appropriate Official Form." *Id.* The objective behind the requirement for substantial conformity is not a form over function issue. Rather, it is a central requirement to the accurate and efficient administration of the claims allowance process. The information required by the Official Form streamlines the claims allowance processes and is a Congressionally mandated intentional departure from the liberal notice pleading practice under federal civil procedure. *Cf.*, *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

This Court finds as a matter of law that, the Judicial Conference of the United States, pursuant to Fed.R.Bankr.P. 9009 promulgated an Official Form enumerated as Form 10—Proof of Claim. Official Form 10 provides a concise and succinct format. Rather than using the Official Form as prescribed by the Judicial Conference, Max Flow filed a paper that appears to provide certain aspects of a proof of claim while not containing all information required by the Official Form. Pursuant to Fed.R.Bankr.P. 9009, the Official Forms shall be observed and used. Rule 9009 does permit alteration of the Official

7. Although a proof of claim is not required to be filed and signed under oath or penalty of perjury, *see*, *In re Shabazz*, 206 B.R. 116 (Bankr.E.D.Va.1996), it is a federal crime to present a fraudulent claim in a title 11 case. 18 U.S.C. §§ 152 and 3571.

8. Although courts do allow informal claims, such is not at issue in these proceedings and are not addressed. The allowance of an in-

formal claim can only be by judicial action. Thereby rendering the allowance of an informal claim outside of the administrative scope of the claims allowance process administered by the Clerk of the Bankruptcy Court.

9. As will be seen, the holder of a claim is not that entity's attorney at law, attorney at fact, proxy, or agent, but rather the legal holder of the claim.

Forms but only "as may be appropriate" and only so far as to "permit economies in their use." With those procedural guidelines, and the requirement for any proof of claim to substantially conform to the Official Forms, this Court will assess the adapted proof of claim utilized by Max Flow.

The major alteration at issue in these proceedings is the inability to differentiate between the creditor and the entity upon which notice is to be given.[10] The Official Form provides separate and distinct areas that specifically differentiate between the "Name of Creditor (The person or other entity to whom the debtor owes money or property)" and then below that space, the "Name and Address where notices should be sent." *See*, Official Form 10, Proof of Claim. Max Flow's adapted proof of claim only provides a space for the "Creditor's Name" and instructs the individual preparing the proof of claim that the space is to be used to "Print or Type Full Name of Creditor." *See*, POC # 15. Below the space for the creditor's name is a space for "Address."

At first glance, such an adapted format appears to be an appropriate alteration envisioned by Rule 9009. However, the information provided proves the opposite. Using the Official Form, the creditor is independently identified, whether or not the proof of claim is filed by the creditor,

an authorized agent, the debtor or trustee,[11] or by a surety, indorser, or other co-debtor on the claim.[12] In Max Flow's adapted proof of claim, the actual creditor is obscured and not identifiable. This is evident by the facts of this case, Max Flow filed a proof of claim. *See*, POC # 15. As indicated upon the proof of claim, the "Creditor's Name" is shown as "Max Flow Corp. On Behalf Of MBNA America Bank, N.A. And Its Assigns."

Both the Claims Register prepared in accordance with Fed.R.Bankr.P. 5003(b) and the Chapter 13 Standing Trustee's Report and Recommendation on Confirmation of Plan indicate that the holder of Claim 15 is Max Flow. By the Trustee's Report, all distributions upon Claim 15, if allowed, would be made from the Trustee to Max Flow, without regard that the issue of whether those payments were made to Max Flow as a creditor or a creditor's agent. Without a review of the total case file, a third party seeing an order confirming this Chapter 13 case, prepared from the Trustee's Report and Recommendation and in accordance with the Debtors' proposed plan, would conclude that Max Flow is a creditor of the Debtors. As this Court has already determined and Max Flow admits, such a conclusion is contrary to the actual position of Max Flow. Max Flow is not a creditor of these Debtors, and further, because of the lack of authority, can-

---

**10.** The other deficiencies in the altered form in use by Max Flow is a lack of ability to show "amended" or "replacement" status, lack of "date debt was incurred," proper prescribed descriptions of the "basis of claim," and specifically, the requirement as stated in paragraph 8 of Official Form 10: "8. **Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary." The language used by Max Flow, "if a security interest is claimed, a copy of the security instrument and evidence [sic] of perfection of such security interest, if any, is attached" leads a

claim preparer to believe that unless the creditor is a secured creditor, the only document needed to be filed with a proof of claim is the proof of claim itself. Such is not the case. The requirement is clear on the face of Official Form 10. The creditor is to attach copies of any supporting documents, or either an explanation or summary thereof if not available or voluminous. The fact that the documents are on microfiche does not meet the exceptions. There is no exception available when the documents are available, and are not voluminous, but only have been reduced to a subsequent and different format.

**11.** In accordance with Fed.R.Bankr.P. 3004.

**12.** In accordance with Fed.R.Bankr.P. 3005.

not receive payments on account of a debt owed its principal, MBNA.

The documentary exhibit offered by Max Flow at the hearing provides further evidence that the proof of claim filed by Max Flow indicating the Creditor as: "Max Flow Corp. On Behalf Of MBNA America Bank, N.A. And Its Assigns" not only can be interpreted in a manner which renders Max Flow as the creditor, but Max Flow intended such interpretation. At the hearing on the Debtors' Objection to Claim, Max Flow introduced into evidence, without objection, a copy of this Court's order confirming a Chapter 13 Plan of these Debtors in a prior case. *See,* Resp't. Ex. 1, Findings of Fact and Order Confirming Chapter 13 Plan and Providing for Related Matters, *In re O'Dell,* 97–43130–JSS–13.

In the Debtors' prior Chapter 13 case, the order of this Court confirming the Debtors' Chapter 13 plan of reorganization provides for distribution to Max Flow as an unsecured creditor/claimant upon an allowed proof of claim # 10. *See,* Resp't Ex. A. As Max Flow introduced the Debtors' confirmation order from their previous Chapter 13 case, as evidence of the propriety of the Claim filed by it, this Court finds that such evidence requires a further investigation into the Debtors' previous Chapter 13 case.

■■■■■ What this requires is a review of the proof of claim filed by Max Flow in the Debtors' previous Chapter 13 case. A Bankruptcy Judge possesses broad discretion to take judicial notice of the entire file as to what has or has not been filed. *See,* Fed.R.Evid. 201; *In re Johnson,* 210 B.R. 134 (Bankr.W.D.Tenn.1997); *Matter of Alofs Manufacturing Co.,* 209 B.R. 83 (Bankr.W.D.Mich.1997). "It is not error, ... for a court to take judicial notice of proceedings and records in cases before that court." *State of Fla., et al.* v. *Charley Toppino & Sons, Inc.,* 514 F.2d 700 (5th Cir.1975). That holding of the Fifth Circuit is still binding precedent upon this Court. Taking of judicial notice can be discretionary, may be taken at any stage of the proceedings, and "[a] court may take judicial notice, whether requested or not." *See,* Fed.R.Evid. 201(c) and 201(f). The taking of judicial notice of the court's own records in proceedings is only notice of the contents of those records, and not of the truthfulness of the assertions therein. *In re Calder,* 907 F.2d 953, 955 n. 2 (10th Cir.1990). Accordingly, pursuant to Fed. R.Evid. 201(c) and by application of the case law interpreting that evidentiary rule, this Court takes judicial notice of the contents of the record in the previous title 11 case, *In re O'Dell,* 97–43130–JSS–13.

On December 8, 1997 a proof of claim was filed in that case by Max Flow. As in the present case, the proof of claim asserted as the "Creditor's Name" one "Max Flow Corp. On Behalf Of MBNA America Bank, N.A. And Its Assigns." See, POC # 10, 97–43130–JSS–13. Additionally, the proof of claim asserted a general unsecured claim totaling $4,489.15. The Claims Register prepared in accordance with Fed.R.Bankr.P. 5003(b), the Chapter 13 Standing Trustee's Report and Recommendation on Confirmation of Plan, and the court order captioned "Findings of Fact and Order Confirming Chapter 13 Plan and Provisions for Related Matters" all indicate that the holder of Claim 10 is Max Flow. By the Trustee's Report and the order confirming the Debtors' plan, all distributions upon Claim 10 would have been made from the Trustee to Max Flow.

The previous case, as well as the papers filed by Max Flow in the present case, indicate a consistency or pattern of action by the agent, Max Flow. The use of an adapted proof of claim that names the creditor in a manner that obscures who is filing the proof of claim, who is intended to receive notices, and who is the creditor on the proof of claim fails to be in substantial conformity with the Official Forms and fails to be filed in accordance with Fed. R.Bankr.P. 3001 and 9010.

Just because this Court sees a pattern to Max Flow's performance, and the adapted proof of claim utilized by Max Flow fails to be in substantial conformity with the Official Forms, and thereby was not filed in accordance with the Bankruptcy Rules; these alone will not determine in whose name this proof of claim was filed. For that determination, this Court needs to look to the procedural law and requirements governing third-party representative actions and pleadings. Max Flow contends that the proof of claim stating the "Creditor's Name" as "Max Flow Corp. On Behalf Of MBNA America Bank, N.A. And Its Assigns" properly asserts the creditor as that being MBNA America Bank, N.A. and its assigns. *See,* Resp't Resp., para. 9; Resp't Br., pg. 7. The central issue involved is whether, a proof of claim, previously compared to a complaint for a money judgment, is maintained in one's own name or is pleaded for the represented party when the party is named as: "Max Flow Corp. On Behalf Of MBNA America Bank, N.A. And Its Assigns."

In federal civil practice there are many permissible third-party representative actions and pleadings. Central to bankruptcy practice, a trustee or a debtor-in-possession may "commence and prosecute any action or proceeding in behalf of the estate before any tribunal." *See,* Fed. R.Bankr.P. 6009. The two seminal federal representative suits are governed by Fed. R.Civ.P. 23, Class Actions, and Fed. R.Civ.P. 23.1, Derivative Actions by Shareholders. In both state and federal proceedings a representative suit can be maintained in one's own name on behalf of an incompetent, infant, decedent, trust, estate, or other similarly situated entity. The ability to bring a representative suit in one's own name on behalf of another is created by statutory grant of authority. All of these representative suits require that the party bringing the action indicate such representative appearance by naming himself/herself as: "Himself/Herself, on behalf of [the incompetent, infant, decedent, estate, etc.]." *See,* 5A Am.Jur.Pl. & Pr. Forms Captions, Prayers, and Formal Parts § 13 (Rev.1998); 59 Am.Jur.2d Parties § 47, *et seq.,* (Rev.1998). This Court cannot find a statutory grant of authority for a servicing agent to bring a claim or cause of action in its own name on behalf of its principal.[13]

Max Flow contends however that the proof of claim was not filed in Max Flow's name, but rather in the name of MBNA America, its principal and the actual creditor. Based on the preceding analysis, this Court does not find such an argument to be persuasive. When an authorized agent seeks to bind its principal, the language "on behalf of" fails. The language of "on behalf of" is a representative language only associated with representing a third-parties' rights and interests as one's own cause and in one's own name. When a personal representative brings a claim or cause of action using the language "on behalf of," he brings the third-parties' claim as his own, in a legal representative manner, in accordance with a statutory grant of authority. Here, not only does Max Flow lack sufficient agency authority; Max Flow also lacks any statutory grant of authority.[14]

---

**13.** It is a general rule in agency principal law that an agent cannot maintain or defend an action in its own name on behalf of its principal. *See generally, Cragin & Co. v. International S.S. Co.,* 15 F.2d 263, 264 (2d Cir. 1926).

**14.** Although not applicable, there are limited exceptions that allow an authorized agent to represent its principal in the agent's own name: (1) when principal is beyond jurisdiction of the forum; (2) when the contract has

been unequivocally assigned; or (3) when the agent is personally liable or bound by the contract. *See generally, Osborn v. Bank of U.S.,* 9 Wheat. 738, 22 U.S. 738, 6 L.Ed. 204 (1824); *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.,* 630 F.2d 250 (5th Cir.1980); *Lumbermen's Mut. Cas. Co. v. Norris Grain Co.,* 343 F.2d 670 (8th Cir.1965); *Hoeppner Const. Co. v. United States for Use of Mangum,* 287 F.2d 108 (10th Cir.1960); *Costanzo Coal Min. Co. v. Weirton Steel Co.,* 150 F.2d 929

■ The appropriate language that is to be used when an agent files a claim or action for its principal is "by," "through," "by means of," or "via." *See generally, Bank of Metropolis v. Guttschlick,* 14 Pet. 19, 39 U.S. 19, 10 L.Ed. 335 (1840); *Childress v. Emory,* 8 Wheat. 642, 21 U.S. 642, 5 L.Ed. 705 (1823); *Industrial Sav'gs Bank v. Greenwald,* 229 Ala. 529, 158 So. 734 (1935); *McGeever v. S.H. Harris & Sons,* 148 Ala. 503, 41 So. 930 (1906). None of these phrases indicate a legal representative standing, but only a representative agent stature. By filing a proof of claim asserting the "Creditor's Name" as that of "Max Flow Corp. On Behalf Of MBNA America Bank, N.A. And Its Assigns," the agent, Max Flow was presenting the proof of claim in its own name and not in the name of the actual creditor, MBNA 'by,' 'through,' or 'as its agent.'

In executing and filing the proof of claim in its own name, Max Flow asserted that it, not MBNA, possessed a claim against these Debtors and this bankruptcy estate. A proof of claim filed in its own name and using language indicative of statutory legal representative standing, appears only to be a vague shielded attempt to later argue that the claim was filed for MBNA if Max Flow's authority was ever challenged. This is Max Flow's strategy in these Debtors' Chapter 13 cases.

Due to the proof of claim filed by Max Flow, the Debtors' previous plan in the prior case, provided that Max Flow was to receive distributions as the allowed creditor/claimant. Max Flow never corrected the misled presumption that it held the authority to receive payments. Upon confirmation of that plan, Max Flow still did not correct that wrongful presumption, then set down in a Court order, but rather continued on without regard to its actual authority and its extreme limitations. In the present case, Max Flow again asserts itself as a creditor on the proof of claim. Had the Debtors not objected to Max Flow's authority and status as a party in

interest, this case would have proceeded again on an erroneous presumption given through prima facie evidence under criminal penalty. Max Flow again would have received distributions from plan payments. As has finally been ascertained, by MBNA America's own affidavit, Max Flow did not then nor now presently possess the authority to receive any such payments or distributions.

This Court finds and concludes that the alterations upon the Official Form Proof of Claim in use by Max Flow, at the least confuses and confounds a streamlined administrative process for claims allowance. Such confusion affords an agent, without apparent or actual authority to do so, the ability to receive payments from a Chapter 13 plan. Further, such confusion renders an agent that is only authorized to file proofs of claim for its principal as a *de facto* creditor or one with a statutory grant of legal representative status. Congress mandated that any proof of claim filed "shall conform substantially to the appropriate Official Form." *See,* Fed.R.Bankr.P. 3001(a). Max Flow's misleading adaptation of the Official Form undermines the presumptive status afforded a proof of claim and hampers the streamlined claims allowance process. Such deviation from the appropriate Official Form for a proof of claim shall not be tolerated.

**B. Debtors' Objection to Claim**

■ This brings the Court to the Debtors' objection to the claim filed by Max Flow. The ground asserted by the objection is that Max Flow is not a party in interest. Max Flow responds in its brief that such ground does not bring into question either the validity or the amount of the claim, and thereby the Debtors have not challenged the prima facie claim. See, Resp't Br., pg. 3. This however is not the case as has already been shown. The Debtors' object to Max Flow's status as a party in interest. As it has been found

(4th Cir.1945); *Associated Press v. KVOS, Inc.,* 80 F.2d 575 (9th Cir.1935).

that Max Flow neither possesses a claim nor stands as a creditor in this bankruptcy case, the claim filed by Max Flow in its own name is patently invalid. By raising the objection to Max Flow as a party in interest, the validity of Max Flow's claim was properly challenged.

When an objection to a claim is filed the administrative functioning of the claims allowance process ceases, as to that claim, and the judicial functioning of the bankruptcy court is invoked. *See,* 11 U.S.C. § 502; Fed.R.Bankr.P. 3007. Because of all of the ramifications associated with a proof of claim, when the judicial functioning is called to bear in the claims allowance process, the objection is a contested, litigated proceeding. An objection to claim is a core proceeding which requires a hearing, not merely an opportunity to respond, and sufficient time (at least 30 days) for the creditor and/or the claimant to prepare. *See,* 28 U.S.C. § 157(b)(2)(B); 11 U.S.C. § 502(b); and Fed.R.Bankr.P. 3007. If the objection raises issues and demands relief of the kind specified in Rule 7001, such objection is transformed into an Adversary Proceeding. *See,* Fed.R.Bankr.P. 3007 (last sentence).

 To further illustrate the serious implications involved and the importance of the claims allowance process, the Bankruptcy Local Rules provide that an objection to a claim is a contested matter governed by Rule 9014. *See,* Bankr.L.R. 3007–1.[15] Such provision incorporates the discovery rules and other applicable rules of procedures commonly associated with civil proceedings, and in bankruptcy, Adversary Proceedings. Because of the presumptive status in Rule 3001(f), the objecting party bears the initial burden of proof, by an affirmative presentation supporting the objection in order to overcome the prima facie validity of the creditors' claims.

*In re McCoy,* 163 B.R. 206, 209 (Bankr. M.D.Fla.1994), *see also, In re Bertelt,* 206 B.R. 587 (Bankr.M.D.Fla.1996). The objecting party must present "some evidence" meant to contradict the proof of claim, upon which the Bankruptcy Court then must weigh the evidence presented against the prima facie evidence presented by the creditor's proof of claim and any additional evidence presented by the creditor. *In re Friedman,* 436 F.Supp. 234, 237 (D.C.Md.1977). If the objecting party is successful, the burden again shifts to the creditor to present evidence supporting its claim's validity, extent, priority, status, and amount.

The evidence presented by the Debtors, as briefed pursuant to this Court's directions to the parties, indicates a systematic attempt to confuse and confound the bankruptcy system, its administrative claims allowance process, the parties, and this Court. First, the Debtors present the proof of claim filed by Max Flow and the appearance of the "Creditor's Name." Second, the Debtors present the "Accounting Summary" which was attached to the proof of claim. That summary states:

> The above account information was derived from the information contained in the Max Recovery, Inc. data base, which includes information provided by the **previous owner** of the account, MBNA America Bank, N.A. and other sources, including the Bankruptcy Court.
>
> POC # 15, Ex., Accounting Summary. [emphasis added by Dbtr. in Dbtr.'s Br.].

The Debtors assert that Max Flow has not provided them with any evidence that Max Flow has purchased the account from MBNA as is stated upon the attachment to the proof of claim. The prima facie showing of the validity of the claim is further brought into question by the affidavit of a

---

**15.** Pursuant to Fed.R.Bankr.P. 9029(a), the judicial panel of Bankruptcy Judges for the Northern District of Alabama made local rules of practice and procedure consistent with the Acts of Congress. In accordance with Bankr.L.R.2090–2 and 2091–1(f), attorneys appearing in this court are required to be familiar with and are governed by the local rules.

manager from the creditor, MBNA, attesting to the agency authority vested in Max Flow for the sole purpose of filing a claim for MBNA on that account. At the final hearing on the Debtors' objection, Max Flow admits to never having purchased this account. Therefore, this Court finds that the attachment asserting assignment is not only unsubstantiated, but false and misleading by Max Flow's own admission.

Throughout, from the initial filing of the title 11 petition, through the objection to claim, the response, the motion to strike, and the briefs filed by both parties, it has stood uncontested that the Debtors owe a general unsecured debt to the creditor MBNA America Bank, N.A. Further, neither the Debtors admit nor does Max Flow allege that it possesses a claim against the Debtors or the estate. In fact, Max Flow admits to the opposite; Max Flow admits to being only an agent of the creditor MBNA.

This Court finds that MBNA, the creditor and proper party in interest in this dispute, did not appear or otherwise contest the Debtors' Objection to Claim. Upon the foregoing, this Court finds that, although an authorized agent possesses the ability to file a proof of claim for a creditor, so long as it has the necessary authority, the claim at issue, proof of claim # 15, filed by Max Flow is found to be filed in Max Flow's own name. The proof of claim, and the attachments thereof, presented as prima facie evidence under criminal penalty is not only misleading, but materially false in Max Flow's assertion of being the creditor and of purchasing the claim from the actual creditor. Max Flow presents a determined and calculated pattern of behavior which renders Max Flow as being seen as a creditor of a Debtors' bankruptcy estate.

Because Max Flow does not possess a claim against these Debtors or this bankruptcy estate; Max Flow fails to be a creditor of these Debtors or this bankruptcy estate; and fails to have the authority to receive payments, distributions, or property from this bankruptcy estate, the Chapter 13 Standing Trustee over this title 11 case, or these Debtors, the proof of claim filed by Max Flow in Max Flow's own name must be disallowed pursuant to Fed.R.Bankr.P. 3001 and 11 U.S.C. § 502. *See generally,* U.S. CONST. art. III, § 2 (requiring a case or controversy); *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962); *Flast v. Cohen,* 392 U.S. 83, 101, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947 (1968) The Debtors' objection to the proof of claim filed by Max Flow is due to be sustained.

## C. Motion to Strike the Response to the Objection

With the resolution of the Debtors' objection to claim, this Court now focuses upon the Debtors' motion to strike the response to the Debtors' objection to claim that was filed by Max Flow. This Court first focuses upon whether an agent possesses the ability to file a response to a pleading alleging that the agent lacks authority. Upon the determination of that issue, this Court will then address the issue raised by Max Flow, that an agent is the proper party to protect the rights of its principal. Again, as the agency office associated with the actions of Max Flow do not arise out of a statutory provision, this Court looks to the applicable state and common law governing agency-principal relationships.

### 1. Servicing Agent's Ability to File Proof of Agency Status

Max Flow asserts that because the Debtors' objection raised the issue of whether Max Flow held the authority to file a claim on behalf of its principal, then it "is the appropriate, and only possible respondent." *See,* Resp't Br., pg. 6, Doc. No. 34. However, such is not an accurate assessment of the law governing principal and agency relationships or of the posture the responsive pleading filed and advocated by Max Flow. An agent can only act within the authority bestowed upon it by

its principal. Because the authority bestowed upon Max Flow only authorizes it to file claims on behalf of its principal, Max Flow's agency is extremely limited. *See generally, Gillentine v. Illinois Wesleyan University*, 194 F.2d 970 (5th Cir.1952); *City Stores Co. v. Williams*, 287 Ala. 385, 252 So.2d 45 (1971); *Caldwell v. Caffey*, 269 Ala. 543, 114 So.2d 560 (1959). In asserting the rights and authority of a agent, it is the principal, not the agent, who is ultimately responsible and liable for the actions of its agent within the scope of its express, implied, apparent, or ratified authority. *See, Butler v. Standard Life Ins. Co. of the South*, 232 Ala. 238, 167 So. 307 (1936). Because the principal bears the burden of liability of the agent's actions, Max Flow is inaccurate in stating that it is the "only possible respondent." It is the principal that is the necessary party to prove agency, not the agent. *See,* Fed.R.Bankr.P. 7017, *applying* FRCP 17(a); and 7019, *applying* FRCP 19(a)(1).

 However, Max Flow is correct in the assertion that it can, as agent and on its own behalf, appear in a judicial forum to offer evidence supporting its position that it is an authorized agent of its principal. *See,* Fed.R.Bankr.P. 7020, *applying* FRCP 20(a). This appearance is only in protection of its own interests and only upon its own behalf. Further, this appearance is only as a permissive party, because an agent, not liable upon the underlying contract, generally offers nothing toward the finality of the suit. The appearance of an agent to provide evidence of its agency status is advocating its rights and position in a third party contract not necessary or central to the cause of action at bar, but may be impacted by any ruling or judgment. Allowing an agent to appear protects that entity's rights under a contract not in controversy is discretionary upon the court and whenever permitted, is granted under the concepts of permissive joinder.

As has already been noted, Congress envisioned problems associated with proofs of claim being filed by authorized agents. The noted problem envisioned is an attack on the status of an agent in bankruptcy proceedings, specifically in regards to an authorized agent filing a proof of claim. *See,* Fed.R.Bankr.P. 9010(c). Congress intentionally stated that an agent's authority or power-of-attorney need not be filed concurrent with any proof of claim executed by that agent for its principal. However, Congress did specifically provide what is required to show an agent's authority or power-of-attorney when required either by statute, procedure, or allegation of lack of authority. Because Rule 9010(c) is directed toward the agent, holder of a power of attorney, or proxy, and not the creditor or party in interest, it is those entities permitted and/or required to provide, produce, and show proof of authorized agency status. This however does not limit the principal's right and ability to prove agency status of its agent.

The Debtors' objection to claim raised the issue of the propriety of Max Flow's action in filing a proof of claim. Although this Court has found the proof of claim was filed by Max Flow asserting Max Flow, not MBNA, as the creditor; this Court will afford Max Flow the sufficient latitude to offer the evidence supporting its status as an authorized agent of MBNA America. Contrasted with Max Flow's assertion that such action made Max Flow a party in interest, Max Flow's position is merely permissively and discretionarily permitted by this Court. Neither this discretionary and permissive appearance nor the federal rules of procedure, create in Max Flow the requisite standing as a party in interest to defend the rights and claims of MBNA. Permitting Max Flow to appear to provide evidence of its agency authority assures the agent adequate notice, process, and preservation of its rights in a principal agency contract that has been tangentially brought into these proceedings through

the objection raised by the Debtors.[16] If Max Flow merely advocated and presented evidence of its authority to act as an agent of MBNA then this matter would be resolved. However, such is not the case and this Court must address the actions, advocacies, and acts Max Flow asserts in the Response to the Debtors Objection.

### 2. Servicing Agent's Ability to File and Appear in Representation of its Principal

Max Flow is authorized as MBNA's agent in a narrowly limited authority to only file claims. In responding to the Debtors' objection to the claim so filed, Max Flow went beyond the mere advocation of its right and authority as an agent. Max Flow advocated the rights, interests and the position of MBNA as a general unsecured creditor in the bankruptcy estate. *See*, Resp't Resp., paras. 11–14, Doc. No. 22. At the hearing, Max Flow asserted the contention that it possessed the authority to protect and enforce the rights of its principal, MBNA America. When an agent's power and authority is limited, such must be strictly construed and the agent cannot assert powers which it had no right to understand was conferred unto it by the language authorizing the agent to act. *See*, *New York Life Ins. Co. v. Horton*, 9 F.2d 320, 323 (5th Cir. 1925). As is generally applicable in agency principal law, an agent cannot maintain or defend an action in its own name on behalf of its principal. *See generally, Cragin & Co. v. International S.S. Co.*, 15 F.2d 263, 264 (2d Cir.1926).

Max Flow asserts that as an agent, it stands in the shoes of its principal. Although such assertion is accurate as to the rights of an assignee, such is an inaccurate assessment of principal and agency law.[17] As has already been concluded, Max Flow is not an assignee, but merely MBNA's limited special agent for the sole purpose of filing claims. Therefore, the law of assignee-assignor is inapplicable to the standards required to be enforced under a principal and agency relationship theory. As Max Flow is a limited special agent of MBNA, and is not asserting rights as the creditor itself, then it must comply with the restrictions on agent activities in bankruptcy:

A debtor, creditor, equity security holder, indenture trustee, committee or other party may (1) appear in a case under the Code and act either in the entity's own behalf or by an attorney authorized to practice in the court, and (2) perform any act not constituting the practice of law, by an authorized agent, attorney in fact, or proxy. Fed.R.Bankr.P. 9010(a).

Bankruptcy Rule 9010 specifically prohibits an authorized agent from performing any act that constitutes the practice of law.

An Objection to Claim is a contested matter and, accordingly, falls under Bankruptcy Rule 9014. Bankruptcy Rule 9014 states that "[i]n a contested matter in a case under the Code not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought." The parties to a contested matter are also granted rights under Rule 9014 to conduct discovery. The Federal Rules of Bankruptcy Procedure apply several of the Federal Rules of Civil Proce-

**16.** Consistent with Fed.R.Bankr.P. 9010(c), the proper response to the objection as to Max Flow's agency status would have been to file a copy of the Power of Attorney or an Affidavit of Defense.

**17.** An agent can only act within the scope of his agency. *See*, *City Stores Co. v. Williams*, 287 Ala. 385, 252 So.2d 45 (1971); *Caldwell v. Caffey*, 269 Ala. 543, 114 So.2d 560 (1959); *Purnell v. City of Florence*, 27 Ala.App. 516, 175 So. 417 (1937) (The distinguishing features of "agency" are its representative character and its derivative authority. When an 'agent' acts independently, those acts cannot be classed as an agent for any purpose since there must be a principal in order to have an agent. Independent action denotes independence, not the requisite representative character and derivative authority.).

dure. Consequently, contested matters rise beyond the administrative filing of an uncontested claim and enter the area of judicial proceedings, affording the parties extra rights, opportunities, and the advocacy and posturing of legal positions. The American Bar Association Committee on Unauthorized Practice of Law's Statement of Principles ("ABA Statement") states:

1. A collection agency may engage in the business of collecting past-due accounts for customer-creditors (hereinafter 'creditors') provided, however, that the agency may not:

. . . .

(f) Employ or terminate the services of attorneys or arrange the terms or compensation for such services on behalf of creditors without written authority to do so; . . .

4. When authorized by a creditor, it is proper for an agency as agent for the creditor, to conduct correspondence of a routine nature (such as inquiries and reports with respect to status of the claim) on behalf of the creditor with the attorney to whom the creditor's account has been transmitted for collection, and, in general, to carry on activities similar to those ordinarily carried on by the collection department of a creditor organization provided that the attorney shall be free at all times to communicate with the creditor and provided further (i) that the agency may not attempt to control or in any wise suggest or imply that it has any right to control the actions of the attorney or otherwise interfere with the attorney-client relationship between the creditor and the attorney, and (ii) that decisions as to the manner in which the claim is to be handled by the attorney, whether suit is to be brought, the claim is to be compromised or settled, whether the claim is to be returned, and any other matters requiring the decision of the creditor shall in each instance be left solely to the creditor and the attorney in direct communication with each other when the attorney so desires and

the attorney shall be so advised in the forwarding letter. ABA Comm. on Unauthorized Practice of Law, Statement of Principles (1937).

These activities are similar in scope to those approved in *Paul Mason,* 46 F.3d at 469. Max Flow went beyond the scope of these activities. As further evidence of Max Flow's apparent intent to vaguely shield its attempt to appear as the actual creditor and holder of a claim, Max Flow went far beyond the scope of it's agency authority.

■ When an entity's sole connection with the litigation is that they are the agent of the principal, which is the entity actually interested in the outcome of the proceeding, the agent does not have standing. *See, Golden Cross Min. & Mill. Co. v. Free Gold Min. Co.,* 154 F. 441, 442 (9th Cir.1907). In sum, it is the principal, as the creditor, that is the party in interest in an objection to its claim, whether the claim was filed by itself, its authorized agent, the debtor, trustee, or co-obligor. In application of statutory law then, it is the principal, not its agent, that is solely authorized to conduct its own case in a federal forum. *See,* 28 U.S.C. § 1654; *Heiskell v. Mozie,* 82 F.2d 861, 863 (D.C.Cir.1936).

■ Max Flow is not a legal corporation whose members are admitted to the practice of law in this or any jurisdiction. When Max Flow filed a responsive pleading advocating the propriety of MBNA's claim, Max Flow began representing the rights of a third party. Even when Max Flow filed the proof of claim, it was asserting that it was the holder of that claim in a third-party representative manner with some type of statutory authority. As Max Flow and MBNA have shown, the agency authority extended unto Max Flow stops at the filing of a claim for MBNA, not on behalf of MBNA. However, even if Max Flow were authorized to advocate, defend, and represent MBNA's rights, that authorization would necessarily fail. A principal cannot authorize an agent to perform illegally or outside the boundaries of the law.

Unless the agent is an attorney-at-law, the authorization to represent the rights of a third party is proscribed by law. *See,* Ala.Code § 34–3–1, *et seq.;* Ala.Code Prof. Cond. Because neither Max Flow nor its employees are admitted to practice law, no authorization could possibly exist for Max Flow's actions.

In the present case, Max Flow's Response and its Brief were filed by an attorney who signed as "Local Counsel for Max Flow Corp., on Behalf of MBNA America Bank." Even the signature caption reveals Max Flow has retained its own attorney for the purposes of pursuing MBNA's claim against the Debtors. Moreover, Max Flow's attorney has never asserted he represents the interests of MBNA directly in any way. He appeared solely for Max Flow. The ABA Statement allows collection agencies to contact attorneys only if authorized to do so by the principal creditor. In the case at hand, Max Flow only possesses the authority to file claims, *see supra,* therefore, Max Flow does not have the authority to forward a disputed claim to an attorney on behalf of its principal, MBNA. It is clear, though, that even if Max Flow was authorized to forward the matter to an attorney, the attorney-client relationship was developed between the attorney and Max Flow, not the attorney and MBNA.

In *Porter v. Alabama Ass'n of Credit Executives,* 338 So.2d 812, 815 (1976), the Alabama Supreme Court interpreted the ABA Statement as allowing a collection agency to forward claims to an attorney "so long as the creditor gives the agency such authority in writing and the attorney-client relationship is established between the Creditor and the Attorney." In the present case, once the Debtors objected to the claim, Max Flow did not refer the claim back to MBNA. Although it may

seem unclear whether Max Flow informed its principal that legal proceedings potentially impacting upon MBNA's rights had been instituted, MBNA prepared the affidavit asserting Max Flow's agency authority on May 1, 2000. *See,* Resp't Resp., Ex. A. Therefore, this Court concludes that MBNA was on notice that legal proceedings, a contested matter under bankruptcy law, an objection to claim, had been instituted against the rights, privileges, and claims of MBNA.

Rather than referring the objection to claim back upon its principal as required by the agency principal relationship, Max Flow retained its own attorney to respond to the Debtors' Objection, and continued to assert the rights of MBNA as its own rights.[18] The course of action taken by Max Flow is undoubtedly outside the scope of the ABA Statement and Alabama Supreme Court's ruling in *Porter.* Max Flow ceased to be a mere agent of MBNA for the purposes of executing a proof of claim when it asserted it had standing to appear as a party in interest. The Court finds that Max Flow's Response to the Debtors' Objection and all subsequent appearances are in violation of Fed.R.Bankr.P. 9010(a), 9010(c), 9011(b)(1), 9011(b)(2), 9011(b)(3), and 9020. Therefore, the Debtor's motion to strike Max Flow's response is due to be granted. With the striking of the pleadings filed by Max Flow, this Court will discuss the sanctionable activities associated with these matters.

## D. Sanctionable Actions and Activities

■ This Court has found, concluded, and determined that Max Flow advocated for the rights, interests, and position of a third-party, MBNA America Bank, N.A., the actual creditor and Max Flow's principal. Max Flow is neither admitted to the

---

**18.** As a corporate entity itself, Max Flow correctly retained counsel to appear. It is well settled law that fictitious legal entities cannot represent themselves in a judicial forum. *See, Osborn v. President of Bank of United States,* 9 Wheat. 738, 829, 6 L.Ed. 204 (1824); *Row-*

*land v. California Men's Colony, Unit II Men's Advisory Council,* 506 U.S. 194, 202, 113 S.Ct. 716, 721, 121 L.Ed.2d 656 (1993). By retaining counsel itself, Max Flow was merely abiding by the well settled requirements of representation by an attorney-at-law.

practice law nor possesses any grant of authority to permit it to represent the rights of a third party in a court of law. As relied upon by the Debtors, Judge Holland ruled in *In re Morgan*, 225 B.R. 290 (Bankr.E.D.N.Y.1998), *vacated on other grounds*, *In re Nunez*, Case No. 98–CV– 7078, 2000 WL 655983 (E.D.N.Y. March 17, 2000) that a servicing agent does not have authority to file affirmative pleadings because such filings constitute the unauthorized practice of law. Although vacated on other grounds, the analysis proves helpful. In *Morgan*, the servicing agent Litton Loan Servicing, Inc. ("Litton") retained counsel to file an Objection to Confirmation, a Motion to Dismiss, and a Motion for Relief from Stay. The motions and objections filed on behalf of Litton were signed by the retained attorney, on behalf of the attorney's firm as "Attorneys for secured creditor Litton." *Id.* at 291–92. Litton defended its actions, insisting it had been granted Power of Attorney by the principal creditor. However, the court rejected Litton's authority, concluding that "a person authorized to bring suit solely on the basis of a power of attorney is not a real party in interest; courts have uniformly denied such a party the right to sue in its own name." *Id.* at 293–94.

Max Flow argues that *Morgan* is inapplicable to these instant filings. In *Morgan*, the servicing agents initiated the contested matters at issue. The Court in *Morgan* was thereby concerned with the propriety of proceedings commenced by servicing agents having no pecuniary interests. This Court does not accept the distinction Max Flow attempts to draw. The *Morgan* case rendered an opinion, that due to the necessity of a case or controversy, standing, and party in interest requirements paramount in any federal forum, is applicable on either side of the aisle, be it plaintiff, defendant, creditor, claimant, trustee, etc.

A case on point to these facts is *In re Chas. A. Stevens & Co.*, 108 B.R. 191 (Bankr.N.D.Ill.1989). In that case, the debtor objected to a proof of claim filed by an agent for a creditor, J.G.H. Enterprises, Inc. ("J.G.H."). *See, id.*, at 192. In response to the debtor's objection, Peter A. Chapman d/b/a Bankruptcy Creditors' Service ("Chapman"), the agent for the creditor, prepared, served, and filed "on behalf" of J.G.H. a "Response to Debtor's Objection to Claim Number 1943." Chapman's Response contained several factual allegations set forth in paragraphs and concluded with a prayer for allowance of the claim in an amended amount. The United States Trustee moved to have the response stricken and for an award of sanctions against Chapman. At the hearing on the debtor's objection to claim and the UST's motion to strike and sanctions, Chapman, the creditor's agent, appeared and admitted that he was not an attorney and not licensed to practice law. In defense though, Chapman argued that the response was of informational nature and concerned a proof of claim, which could be prepared by an agent.

Judge Squires found that the response was in the form and contained the substance of a responsive pleading by an individual who was neither licensed to practice law nor a party appearing pro se. *See, id.*, at 192. Upon that finding, the response was stricken and the court granted leave for the UST to file an affidavit for fees and expenses for the work performed. *Id.*, at 192–93. After notice and opportunity to respond afforded to Chapman, Judge Squires awarded the UST a fee of $300.00 as sanctions against Chapman pursuant to Rule 9011 and using the standards generally followed in awarding fees in bankruptcy. *See, id.*, at 195.

Judge Squires found that Chapman, an agent of a creditor, participated in the unauthorized practice of law in contradiction to the general order of the bankruptcy court which reads: "only members in good standing of the bar of this Court may enter appearance of parties, file pleadings, motions or other documents...." *Chas. A. Stevens*, 108 B.R. at

193. Judge Squires squarely identified what the District Court in *Nunez* failed to see occurring in *Morgan* decision:

> The practice of law, both in courts and out of courts, by one not licensed as an attorney is an illegal usurpation of the privilege of attorneys.... No person can litigate an action in a court as an agent for another unless previously admitted to the bar as a licensed attorney.... A layman cannot represent another in a court of record.
>
> *Chas. A. Stevens*, 108 B.R. at 194 (citations omitted).

The court in *Chas. A. Stevens* was only faced with the issue of an individual, acting as an agent, appearing without counsel in the representation of the rights, interests, and claims of a third party, his principal and the creditor, J.M.H. This Court is not so fortunate. Here, Max Flow sought and obtained not only local counsel, but national counsel to advise it and represent it in courts of law. Thereby creating the appearance of a 'double agency' issue as was raised by the Debtors.

What the Debtors failed to see, because it was suppressed by Max Flow, is that such representation could not occur in this instance. To have a 'double agency' occur, the first agent, here Max Flow, must have the express authority in writing to contact and forward the matter to an attorney. *See, Porter*, 338 So.2d at 815 (Ala.1976). But that actually does not create a 'double agency' because for an agent to forward a matter to an attorney as the agent for the principal, there must be in existence an attorney-client relationship between the principal and the attorney. *See, id.* Here, the only attorney-client relationship is between Max Flow and the attorneys, both local and national counsel.

Therefore, this Court finds that the advocacy of MBNA's rights, appearing in the judicial proceedings, and responding, through a judicial process, to objections raised against administrative filings all constitute the practice of law, which is federally proscribed in bankruptcy fora by

way of Fed.R.Bankr.P. 9010(a), is specifically proscribed by the state law and code of professional ethics in which this federal court sits, Ala.Code § 34-3-1, *et seq.*, and Ala.R.Prof.Cond., and is specifically proscribed by the Bankruptcy Local Rules of the Northern District of Alabama, which reads:

> In all cases in or removed to this court, a party may appear and be represented of record only by a member of the bar of this court, by an attorney permitted to appear pursuant to subsection (b) or (c) of this Rule, or, if an individual, by himself or herself pro se.
>
> Bankr.L.R.2090-2 and 2091-1(d).

Unlike *Morgan,* counsel for Max Flow appeared and filed pleadings for Max Flow. Counsel did not represent that they held any type or manner of attorney-client relationship with MBNA. Therefore, this Court cannot find that Max Flow was brokering the legal services of counsel toward its principal, MBNA. *See, Morgan,* 225 B.R. at 293. Rather, Max Flow was asserting and attempting to enforce the legal rights of MBNA in the name of Max Flow.

It is here that Max Flow sought to legally represent a third party without authority or admittance to the bar. In deciding to file a response to an objection to a claim, Max Flow made a legal determination, exercised legal judgment, prepared legal documents, served, filed, and advocated those documents and its position in a court of law. By merely obtaining its own counsel, such action does not cleanse Max Flow of practicing law without a license or of acting in a manner that constitutes the unauthorized practice of law. In finding that the actions of Max Flow constitute the unauthorized practice of law as defined statutorily by the State Legislature and as further proscribed by federal and local rules, this Court must turn to the actions of counsel to Max Flow.

Unlike *Chas. A. Stevens,* Max Flow appeared through pleadings and in court represented by counsel duly admitted to prac-

tice. As has been noted previously, this is the least of its requirements. *See,* fn. 16, *supra.* The privilege associated with the attorney-client relationship is a time honoured and historically .based right. That right is only possessed by the client, which in a court of law is to be the real party in interest. Although an attorney can raise the privilege as a defense, it is only the client that can voluntarily waive that privilege. It is this hallowed privilege that is being diminished due to the actions of counsel in this case.

The attorney-client privilege and relationship is only between Max Flow and counsel. The real party in interest, the creditor, MBNA America, does not have legal counsel in these proceedings. Counsel for Max Flow do not owe a duty or an allegiance to MBNA and cannot act, advocate, or protect the interests, rights, and claims of MBNA because counsel has no relationship with MBNA. *See, Morgan,* 225 B.R. at 292, *citing, Estate of Ginor v. Landsberg,* 960 F.Supp. 661, 667 (S.D.N.Y. 1996). Once that privilege is lost, it cannot be regained. That is why attorneys owe no fiduciary duty to any third party who in not in privity with the attorney. *See, Ginor,* 960 F.Supp., at 667.

It is obvious that counsel for Max Flow has taken some heed to the *Morgan* decision. Judge Holland cautioned the practicing bar by stating that "[when] the prohibited aspect of the transaction is knowingly misrepresented to a court, such conduct can only be described as being so sloppy as to border on contempt." *See, Morgan,* 225 B.R. at 293. Counsel must have heeded such cautionary language because when pressed by this Court to divulge his client's authority, counsel respectfully submitted "Judge, I am not authorized to answer that."

This brings this Court to the same position Judge Holland was faced with in *Morgan.* Counsel for Max Flow, appeared in representation of actions for Max Flow through papers, pleadings, and in advocacy before this tribunal. The initial stance apparent by the prior case and the proofs of claim filed by Max Flow is that it was asserting the claim in its own name. Attached to that proof of claim, is evidence that Max Flow had purchased the claim from MBNA. Perhaps counsel was unaware that Max Flow did not own the claim as assignee.

However, that does not end the analysis against counsel for Max Flow. Upon filing the response to the Debtors' objection to claim, Max Flow rescinded its position of asserting itself as a creditor. Rather, Max Flow began contending that the claim was filed for MBNA and Max Flow was merely MBNA's agent. Max Flow could not appear in its own name in a legal proceeding due to the fact that Max Flow is a corporate entity. At this time at least, counsel for Max Flow was on notice that they were representing a mere agent, and not the principal, regarding the rights, privileges, interests, and claims of a third party which was not their client.

Instead of rectifying that problem, counsel for Max Flow continued an earnest advocacy of a principal's rights through the position of an agent. None of the exceptions to the prohibition against an agent representing the rights of its principal were evident then and are still not present. It was upon those preparatory meetings with Max Flow that counsel learned that it was representing a party without an interest in the outcome. Further, that party, Max Flow, was making legal decisions and legal judgments for a third party. Additionally, Max Flow did not possess any authority to act in such a manner and was not duly licensed to provide and make legal decisions for a third party.

As has been reiterated time and again throughout this opinion, Max Flow is a corporate entity, and thereby required to be represented by counsel, duly admitted to practice law, in any judicial forum in which it appears. *See, Osborn,* 9 Wheat.

at 829 (and its progeny). As Judge Holland aptly stated:

> Although we have been speaking of the behavior of the servicing agents, it is obvious that they would not have been able to pass legal services on to their principals had they not been acting in concert with the attorneys whose services constituted the gravamina of the offensive conduct. Indeed it is those legal professional who by virtue of their presumed greater legal knowledge should have advised their clients, the agents, against engaging in such prohibited conduct. While ignorance of the law, although never exculpatory, may sometimes be urged on behalf of layperson in mitigation, it would be disingenuous to so argue on behalf of anyone holding himself/herself out as a legal professional.

*Morgan*, 225 B.R. at 295.

As has already been stated, Max Flow was not attempting to pass the legal services of counsel for Max Flow onto its principal, MBNA. Rather, Max Flow was acting as legal counsel for MBNA without authority to so act and without admittance to any bar. Once it was determined by counsel for Max Flow that it was operating beyond its authority as an agent and actually representing the rights, interests, and claims of a third party; counsel for Max Flow knew or should have known that their client was actually practicing law without a license and acting in a manner so as to constitute the unauthorized practice of law. Rather than advise Max Flow of such, and distance themselves from their client's activities, counsel for Max Flow advocated the position laid forth by their client in disregard to the prohibitions already set forth against such activities. In short, counsel for Max Flow has facilitated in the practice of law without a license under state law, and the facilitation of the unauthorized practice of law under federal and local rule.

Accordingly, this Court finds, concludes, and determines that Max Flow has prac-ticed law without a license and has acted in a manner so to constitute the unauthorized practice of law. This Court further finds that Max Flow filed a proof of claim asserting itself as a creditor over a claim it held no interest in and usurping the rights, privileges, interests, and claims of its principal to make those its own. This Court also finds that counsel for Max Flow have facilitated Max Flow in practicing law without a license and furthered Max Flow's activities in the unauthorized practice of law.

Pursuant to Fed.R.Bankr.P. 9011 and 9020, and in concurrence with the holding of *In re Chas. A. Stevens & Co.*, 108 B.R. 191 (Bankr.N.D.Ill.1989), this Court finds that the actions of Max Flow and the actions of counsel for Max Flow are sanctionable. Therefore, this Court will issue an order to show cause why sanctions should not be awarded, why these matters should not be referred to the United States Attorney, the Alabama State Bar Unauthorized Practice of Law Committee, and the Pennsylvania State Bar Unauthorized Practice of Law Committee. Separate orders consistent with this Memorandum Opinion will be entered contemporaneous with this opinion.